UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                                             :
KELLEY CUNNINGHAM and TAMMYE                                 :       06 Civ. 3530 (RJH)
CUNNINGHAM, individually and on behalf                       :
of all other persons similarly situated,                     :
                                                             :
                        Plaintiffs,                          :
                                                             :
        -against-                                            :       **MEMORANDUM OPINION**
                                                             :           **AND ORDER**
                                                             :
ELECTRONIC DATA SYSTEMS CORP.,                               :
                                                             :
                        Defendant.                           :
                                                             :
-------------------------------------------------------------x
```

This is a purported class action brought under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages allegedly owed to plaintiffs and other similarly situated employees of defendant Electronic Data Systems ("EDS" or "Defendant") for, *inter alia*, installing and testing telecommunications systems for American Airlines. Defendant asserts that Plaintiffs were not entitled to overtime pay for their work for EDS because of the "Air Carrier Exemption" to the FLSA, 29 U.S.C. § 213(b)(3), and has moved for summary judgment on this basis. Defendant also contends that Plaintiffs are asserting a cause of action based on Defendant's alleged failure to comply with the FLSA's record-keeping requirements, and have moved to dismiss this claim on the grounds that there is no private right of action to enforce these provisions.

I. **Defendant's Motion for Summary Judgment**

A. **The Air Carrier Exemption to the Fair Labor Standards Act**

Section 207 of the FLSA, 29 U.S.C. § 207, sets forth the general rule that employees are required to be paid overtime at a rate of one and one-half times the employee's regular rate for all hours worked in excess of forty in a single work week. However, the overtime pay requirement of this section does not apply to "any employee of a carrier by air" subject to the Railway Labor Act ("RLA"). 29 U.S.C. § 213(b)(3). The RLA, in turn, covers "every common carrier by air engaged in interstate or foreign commerce . . . and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. § 181.

An "employee" under the RLA "includes every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Surface Transportation Board . . . ." 45 U.S.C. § 151; 45 U.S.C. § 182 (making 45 U.S.C. § 151 applicable to "carriers by air and their employees").[1] A

---

[1] The RLA was originally applicable only to railroads but was amended in 1936 to include air carriers. *See, e.g., Pan Am. World Airways, Inc. v. United Broth. of Carpenters and Joiners of Am.*, 324 F.2d 217, 218 (9th Cir. 1963); 45 U.S.C. §§ 181–188. Though 45 U.S.C. § 151 refers only to railroad and transportation by railroad, the definition of "carrier" is made applicable to air carriers by 45 U.S.C. § 182, which states that "[t]he duties, requirements, penalties, benefits, and privileges prescribed and established by the provisions of subchapter I of this chapter except section 153 of this title shall apply to said carriers by air and their employees in the same manner and to the same extent as though such carriers and their employees were specifically included within the definition of 'carrier' and 'employee', respectively, in section 151 of this title." The statutory references to railroads and rail transportation have therefore been interpreted to apply also to air carriers and air transportation. *Air Line Stewards and Stewardesses Ass'n, Int'l v. Northwest Airlines, Inc.*, 267 F.2d 170, 173 (8th Cir. 1959) ("The legislative history of the act which extended the Railway Labor Act to include air carriers and their employees indicates that it was the intention of the Congress by such amendment to give the same range to employees engaged in air transport as would be invoked by men engaged in railroad employment."); *District 6, Int'l Union of Indus. v. Nat'l*

2

"carrier" under the RLA "includes any railroad [or air carrier] subject to the jurisdiction of the Surface Transportation Board . . . and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad [or air] and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad [or air], and any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any such "carrier" . . . ." 45 U.S.C. § 151.

"[E]xemptions to the FLSA are 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quoting *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960)). It is the employer's burden to establish that an exemption applies. *Id.*

### B. Standard for Deciding a Motion for Summary Judgment

To prevail on a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). "In deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw

---

*Mediation Bd.*, 139 F. Supp. 2d 557, 561 (S.D.N.Y. 2001) (interpreting 45 U.S.C. § 151 as applied to an entity under common control with an air carrier to require service "in connection with the transportation of property by air").

reasonable inferences against the moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### C. Discussion

According to Defendant, the named plaintiffs, Kelley Cunningham and Tammye Cunningham, were directly employed by EDS, but performed work under the control and direction of American Airlines as part of a project to upgrade American Airlines' telephone systems using more technologically advanced telecommunications equipment. For example, Mr. Cunningham installed and performed troubleshooting on new equipment and worked with vendors to restore service following outages and Ms. Cunningham tested American Airlines telephone lines and circuits and recommended disconnection of those lines and circuits that were no longer in use.

Defendant asserts that the Court may determine whether the Air Carrier Exemption applies to Plaintiffs by using a two-part test that considers "(1) whether the individual performs work under the direction or control of an air carrier (the 'control' prong); and (2) whether the individual performs work that has been traditionally performed by air carrier employees and is related to the air carrier's transportation business (the 'function' prong)," (Def.'s Mem. 9 (citing *Verrett v. SABRE Group, Inc.*, 70 F. Supp. 2d 1277, 1281 (N.D. Okla. 1999)).) Defendant contends that, because Plaintiffs concede that they worked at the "control and direction" of American Airlines, the "control prong" is satisfied and the only remaining issue for resolution on summary judgment is whether the work performed by Plaintiffs satisfies the "function prong."

The test described by Defendant is not the test applied in *Verrett*. Rather, in *Verrett*, the court considered whether the plaintiffs' *employer* was under the ownership or control of an air carrier and whether the *employer* provided transportation-related services, for the purpose of determining whether the employer was a carrier subject to the RLA. *Id.* at 1281–83. This is the traditional test used by the National Mediation Board ("NMB")[2] to determine whether a company that is not itself a rail or air carrier engaged in common carriage of freight or passengers nevertheless meets the statutory definition of "carrier" because it is affiliated with a carrier. *See, e.g., John Menzies, PLC d/b/a Ogden Servs., Inc.*, 31 N.M.B. 490, 503–04 (2004); *Command Sec. Corp. d/b/a Aviation Safeguards*, 27 N.M.B. 581, 2000 WL 1434739, at *2 (2000); *Andy Frain Servs., Inc.*, 19 N.M.B. 161, 163 (1992). As noted, the term "carrier" is broadly defined by the RLA to include any carrier and any company which is owned by, controlled by, or under common control with a carrier. 19 U.S.C. § 213(b)(3). If a company is neither a carrier or a company controlled by or affiliated with a carrier, its employees are not subject to the RLA. *See Verrett*, 70 F. Supp. 2d at 1280 (employer under common ownership with airline); *District 6, Int'l Union of Indus. v. Nat'l Mediation Bd.*, 139 F. Supp. 2d 557, 561 (same); *but see Horkan v. Command Sec. Corp.*, 728 N.Y.S.2d 495, 496 (N.Y. App. Div. 2001) (plaintiffs alleged they were employees of both air carrier and unaffiliated company)[3].

---

[2] The NMB is the federal agency charged with labor-management relations under the Railway Labor Act. *See, e.g., District 6, Int'l Union of Indus. v. Nat'l Mediation Bd.*, 139 F. Supp. 2d 557, 559, 561 (S.D.N.Y. 2001).

[3] In *Horkan v. Command Security Corp.*, 728 N.Y.S.2d 495, 496 (N.Y. App. Div. 2001), the plaintiffs were airport security guards who described themselves as employees of both British Airways, a carrier, and Command Security Corporation, a non-carrier. *Id.* In rejecting the plaintiffs' argument that the RLA exemption was inapplicable because they were employed by a non-carrier as well as a carrier, the court noted that the RLA was applicable not only to "employees" but also "to all those 'officials' who 'perform

The Court agrees with the *Verrett* court that the NMB control-function test provides the appropriate analysis. *See Meyer v. Holley*, 537 U.S. 280, 287–88 (2003) ("[W]e ordinarily defer to an administering agency's reasonable interpretation of a statute."). However, as noted, the control prong focuses not on the relationship between the air carrier and the individual employees, but on the relationship between the air carrier and the allegedly affiliated *employer*. *See, e.g., Int'l Cargo Mktg. Consultants d/b/a Alliance Air*, 31 N.M.B. 396, 406 (2004); *John Menzies*, 31 N.M.B. at 504, *Andy Frain Servs., Inc.*, 19 N.M.B. at 163. While evidence of the degree of control and supervision of the carrier over the individual employee is relevant, it is not the end of the inquiry. Rather, in determining whether an entity is controlled by an air carrier, the NMB considers factors including "the extent of the carrier control over the manner in which the company conducts its business; access to [the] company's operations and records; [the carrier's] role in personnel decisions; [the carrier's] degree of supervision over the company's employees; [the carrier's] control over employee training; [] whether company employees are held out to the public as employees of the carrier," *John Menzies*, 31 N.M.B. at 504–05, "the carrier's role in the entity's daily operations," "the entity's employees' performance of services for the carriers," and "the degree to which

---

any work . . . subject to [an air carrier's] authority.'" *Id.* Therefore, the court stated that "the employment status of the plaintiffs is not critical" and that the plaintiffs were subject to the RLA "as subordinate officials under the supervision of a carrier by air." *Id.* Because the plaintiffs were admittedly employees of an air carrier, the significance of the court's alternative finding is unclear. Furthermore, the Court does not find persuasive the court's interpretation of "subordinate official[s]" in 45 U.S.C. § 181 as a reference to individuals not formally employed by the air carrier, in contrast to "employee[s]". The Court notes that the Sixth Circuit has interpreted "subordinate official" to refer to a category of worker with a higher level of responsibility or supervisory authority than "employees" or "laborers". *Dorsey v. United Parcel Serv.*, 195 F.3d 814, 816–18 (6th Cir. 1999); *see also Transp. Workers Union of Am., AFL-CIO v. Argentine Airlines*, 479 F. Supp. 625, 630 n.36 (S.D.N.Y. 1979) ("The RLA, which applies to "employee(s) or subordinate official(s)," . . . does not exclude all supervisory personnel."). Consistent with this interpretation, the NMB's "Representation Manual" includes a definition of "employee or subordinate official" that focuses on the individual's authority and job responsibilities, not the identity of his formal employer. *See Dorsey*, 195 F.3d at 817.

6

the carriers affect other conditions of employment," *Int'l Total Servs.*, 26 N.M.B. 72, 75. *See also Andy Frain Servs., Inc.*, 19 N.M.B. at 164 (listing similar factors).

Defendant's evidence addresses only the relationship between Plaintiffs and American Airlines. This evidence, though relevant, is insufficient to establish whether EDS is sufficiently under the direction or control of American Airlines such that it may be considered a "carrier" under the RLA whose employees, the plaintiffs, are subject to the Air Carrier Exemption. Because there remain genuine issues of material fact regarding whether the RLA, and therefore the Air Carrier Exemption, apply to EDS and its employees, defendant's motion for summary judgment is denied. If such evidence is forthcoming, defendant may renew its motion. Since the Court finds that Defendant has not satisfied the "control" prong of the NMB test, it does not address whether a genuine issue of material fact exists with respect to the "function" prong.

## II. Defendant's Motion to Dismiss Plaintiffs' Record Keeping Claim

Plaintiffs have not responded to Defendant's motion to dismiss their claim based on Defendant's alleged failure to comply with the FLSA's record-keeping requirements. While Plaintiffs allege in the Amended Complaint that Defendant has failed to keep adequate records in violation of the FLSA, including 29 U.S.C. §§ 211(c) and 215(a), it is not entirely clear that Plaintiff seeks any recovery based on this allegations. (*See* Am. Compl. ¶ 28.) In any case, Defendant is correct that there is no private right of action to enforce these provisions. *See, e.g., Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002) (internal citation omitted) ("Under 29 U.S.C. § 216(b), an employee may bring a private action against an employer for unpaid overtime or

minimum wages. This provision does not authorize employee suits for violations of the FLSA's record keeping requirements. Authority to enforce the Act's record keeping provisions is vested exclusively in the Secretary of Labor."). Therefore, to the extent Plaintiffs' complaint purports to assert a claim under the FLSA's record-keeping provisions, Defendant's motion to dismiss this claim is granted.

### III. Conclusion

For the foregoing reasons, Defendant's motion [27] is granted in part and denied in part. If Defendant wishes to renew its motion for summary judgment based on the correct standard and supported by appropriate evidence, it may submit a written application to do so. Prior to submitting such application, Defendant is directed to meet and confer with Plaintiffs regarding a schedule for additional limited discovery, if necessary. Defendant's application, if made, should include a joint proposal regarding discovery and briefing schedules.

SO ORDERED.

Dated: New York, New York
September 30, 2008

Richard J. Holwell
United States District Judge