UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLEY CUNNINGHAM, et al.,

                         Plaintiffs,

          -against-

ELECTRONIC DATA SYSTEMS CORP., et al.,

                Defendants.

06 Civ. 3530 (RJH)

**MEMORANDUM OPINION
AND ORDER**

BRIAN STEAVENS, et al.,

                         Plaintiffs,

          -against-

ELECTRONIC DATA SYSTEMS CORP.,

                Defendants.

08 Civ. 10409 (RJH)

Richard J. Holwell, District Judge:

      In this action, plaintiffs allege on behalf of themselves and all others similarly situated that defendant Electronic Data Systems Corp. ("EDS") misclassified them as exempt, denying them overtime pay for hours they worked in excess of forty per week.  This motion seeks certification as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), to facilitate the sending of notice to potential party plaintiffs.[1]  EDS opposes this

---

[1] Courts typically speak of "certification" or "conditional certification" of collective actions to facilitate notice, but this refers only to district courts' discretionary power to facilitate the sending of notice to potential class members.

motion, asserting that plaintiffs cannot show that they are "similarly situated" under the FLSA. For the reasons state below, the motion is GRANTED in part.

## BACKGROUND

### I.   Factual Background

EDS is an information technology ("IT") outsourcing company.  Its personnel work as computer support technicians, analysts, and engineers throughout the world, although the putative plaintiffs here are all in the United States.  EDS employees perform a myriad of computer support tasks, ranging from actual physical installation and repair of computers to advising customers on equipment purchases and system upgrades to customization of third-party software applications to meet customers' needs.

The most specific labels used to classify EDS employees are "job codes," five-digit numeric codes that correspond to a job title and a job description.  (*See* Lesser Decl. Ex. 36.) Every job code has a salary range, and all EDS employees are assigned a job code.  (Lesser Decl. Ex. 40 at 12.)  EDS used these job codes as internal employee classifications to ensure consistent treatment of its employees (1) with respect to establishing the market value of the responsibilities associated with and suggested salary range for their job codes (*See* Lesser Decl. 1 (Evans Dep.) at 49-50); and (2) with respect to "ensur[ing] compliance with work-related employment laws and regulations."  (*See* Lesser Decl. 41 at 4.)  The job title associated with the job code is "for internal use and may not be the same title that appears on an organization chart, on a business card, or one that is used with Clients."  (Lesser Decl. Ex. 40 at 5.)

Several job codes aggregate into a job progression, which is "designed as a planned progression of work, with each succeeding level becoming more complex and requiring greater

---

"Certification" is neither "necessary nor sufficient" for collective actions under the FLSA, but serves as a useful case management tool.  *Myers v. The Hertz Corp.*, --- F.3d -----, 2010 WL 4227452, at *13 n.9 (2d Cir. Oct. 27, 2010).

knowledge and expertise." (*Id.* at 9, 11; *see also* Lesser Decl. Ex. 36.)  For example, the

"Service Center" job progression consists of the job titles and codes Service Center Analyst

(34530), Service Center Analyst Advanced (34540), and Service Center Analyst Senior (34550).

(Lesser Decl. Ex. 36.)  The "Business Process Improvement" job progression consists of

Business Process Improvement Administrator (50900), Business Process Improvement Analyst

(31900), Business Process Improvement Specialist (31901), Business Process Improvement

Specialist, Senior (31902), and Business Process Improvement Consultant (31903).  (*Id.*)

The next level of classification involves "job families," which are "collection[s] of jobs

that involve similar types of work."  (Lesser Decl. Ex. 40 at 9.)  They describe "a group of jobs

relating to the same nature of work . . . but requiring different levels of skill, effort, and

responsibility."  (Lesser Decl. Ex. 34 at 3.)  EDS has twelve different job families, such as

"Service Delivery," "Corporate," and "Human Resources."  (Lesser Decl. Ex. 40 at 9.)  Multiple

job progressions aggregate into one job family; for example, the "Service Delivery" job family

contains both the "Service Center" and "Business Process Improvement" job progressions.  (*See*

Lesser Decl. Ex. 36.)

The job code classification system is intended to ensure compliance with certain labor

laws, including the FLSA.  Specifically, whether an employee should be classified as exempt

under the FLSA is among the most important considerations in assigning his job code.  (*See*

Evans Dep. at 77-83; Lesser Decl. Ex 43 at 3 ("Getting the exemption status right is the first and

most important step.").)  Indeed, EDS training materials relating to job code selection caution

that "THE EXEMPTION STATUS MUST COMPLY WITH THE FAIR LABOR

STANDARDS ACT."  (Lesser Decl. Ex. 43 at 2.)  EDS assigns job codes to employees through

a process called "job analysis," which is the "[p]rocess of defining a job in terms of its

3

component tasks or duties and the knowledge or skills required to perform them." (Lesser Decl. Ex. 41 at 3.) The person performing job analysis gathers information about a job's context, content, specifications, and the materials and equipment used in that job. (*Id.*) This information, among other things, "[s]upports job code matching" and is "[n]ecessary to ensure compliance with work-related employment laws and regulations." (*Id.* at 4.)

The job descriptions associated with a particular job code are intended to be "[a] summary of the most important duties and major responsibilities of the job, including the general nature of the work performed." (Lesser Decl. Ex. 40 at 13.) EDS training materials advise those assigning job codes to "[s]trive for at least an 80% match between the job code description and the employee's duties and responsibilities." (Lesser Decl. Ex. 43 at 2.) Because job codes are used throughout the corporation, the descriptions had to be "[b]road-based for internal use globally, across industries and organizations." (Lesser Decl. Ex. 40 at 8.) Local managers for individual customer contracts "have the responsibility to elaborate on job descriptions when posting their open positions. This provides the substance and direction for each position." (*Id.*)

Instead of centrally assigning job codes, EDS delegates this function to local managers. (*See* Evans Dep. 38-44.) Although corporate officials are available for "guidance" on job code assignments, the local manager ultimately makes the decision. (*Id.*) Therefore, EDS contends that despite its "intent" to have employees coded correctly, the "reality" was that managers' decisions could be incorrect. (*Id.*) EDS's internal investigations have found "that some organizations have up to 50% of employees improperly job coded (incorrect job family progression, incorrect level, or incorrect exemption classification)." (Lesser Decl. Ex. 40 at 14.) Indeed, EDS engaged in an internal audit in 2007-08 that resulted in the reclassification of some of its employees. (Evans Dep. at 101-02, 195-203.)

## II. Procedural Background

In most cases, the motion to certify a collective action is brought early in the litigation, but one of the cases in this action has been pending since 2006. As such, some explanation of the procedural history of this action is appropriate.

As of the filing of this motion, this action consisted of two cases consolidated for pretrial purposes, *Cunningham, et al. v. Electronic Data Systems Corp., et al.*, No. 06 Civ. 3530, and *Steavens, et al. v. Electronic Data Systems Corp.*, No. 08 Civ. 10409.[2] The *Cunningham* action was commenced on May 10, 2006. In 2006, the parties conducted limited discovery on the issue of whether the "function prong" of the FLSA's air carrier exception, 29 U.S.C. § 213(b)(3) applied. (*See Cunningham*, ECF No. 21.) On January 4, 2008, EDS filed a motion for summary judgment on this issue and a motion to dismiss the plaintiffs' claims that it failed to keep adequate records. The Court issued a Memorandum Opinion and Order dated September 30, 2008 that granted the motion to dismiss but denied the motion for summary judgment on the grounds that EDS had misinterpreted the "control prong" of the air carrier exception. *Cunningham v. Electronic Data Systems Corp.*, 579 F. Supp. 2d 538 (S.D.N.Y. 2008). EDS then filed a motion for leave to file a renewed motion for summary judgment on January 16, 2009, which the Court granted on March 5, 2009. (*Cunningham*, ECF No. 47.) That same day, the Court entered an order that, among other things, set an initial discovery period for "discovery relevant to determining whether first phase conditional certification of a class is appropriate." (*Cunningham*, ECF No. 49.) EDS filed its renewed motion for summary judgment on May 8, 2009. By Memorandum Opinion and Order dated March 30, 2010, the Court denied EDS's renewed motion, finding that EDS still had not satisfied its burden in proving the "control prong"

---

[2] A third case, *George v. Electronic Data Systems Corp.*, 10 Civ. 1155, was consolidated with *Steavens* and *Cunningham* after the filing of this motion. All proceedings in *George* have been stayed pending resolution of this motion.

of the air carrier exception.  *Cunningham v. Electronic Data Systems Corp.*, No. 06 Civ. 3530 (RJH), 2010 WL 1223084 (S.D.N.Y. Mar. 30, 2010).

The *Steavens* action originated in the Eastern District of Michigan.  There, the *Steavens* plaintiffs alleged violations of the FLSA and of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").  On August 12, 2008, the District Court for the Eastern District of Michigan dismissed the ERISA claim, leaving only the FLSA claim.  *Steavens v. Electronic Data Systems Corp.*, No. 07-14536, 2008 WL 3540070 (E.D. Mich. Aug. 12, 2008). By Opinion and Order dated November 25, 2008, that court transferred the *Steavens* action to this Court based on the "first-to-file" rule and *Cunningham*'s earlier filing date.  *Steavens v. Electronic Data Systems Corp.*, No. 07-14536, 2008 WL 5062847 (E.D. Mich. Nov. 25, 2008).

On March 5, 2009, the Court consolidated the *Steavens* and *Cunningham* actions for pretrial purposes only.  (*Cunningham*, ECF No. 48; *Steavens*, ECF No. 13.)  On August 14, 2009, the plaintiffs in both cases moved to consolidate the actions for all purposes.  By Order dated March 30, 2010, the Court denied the motion without prejudice to refiling at the time plaintiffs file motions for class certification.  Most recently, on April 7, 2010, plaintiffs filed this consolidated motion seeking conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b).

## DISCUSSION

### I.  The Overtime Pay Requirement and Collective Actions Under the FLSA

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  This overtime pay

requirement, however, is subject to a number of exemptions. For example, the FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The statute also contains an exemption for certain computer-related skilled positions. 29 U.S.C. § 213(a)(17).

The FLSA further provides that a collective action "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Potential "similarly situated" plaintiffs in FLSA collective actions must "opt in" to the suit to benefit from the judgment. *Id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). This stands in contrast to class action suits under Fed. R. Civ. P. 23, in which individuals are deemed members of the class unless they opt out of the suit. *See Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 632 n.2 (S.D.N.Y. 2007). Therefore, "unlike class certification under Fed. R. Civ. P. 23, 'no showing of numerosity, typicality, commonality and representativeness need be made' for certification of a representative action [under the FLSA]." *Id.* at 632 (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). The "similarly situated" standard "is far more lenient, and indeed, materially different, than the standard for granting class certification under Fed. R. Civ. P. 23." *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB)(DF), 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).

"Neither the FLSA nor its implementing regulations define the term 'similarly situated.'" *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.). But the Second Circuit recently approved a two-step process many courts have used in analyzing

motions to certify collective actions.  *Myers v. The Hertz Corp.*, --- F.3d ----, 2010 WL 4227452, at *13 (2d Cir. Oct. 27, 2010) ("In determining whether to exercise th[e] discretion [to facilitate notice] in an 'appropriate case,' the district courts of this Circuit appear to have coalesced around a two-step method, a method which . . . we think is sensible.").  "The first step is the notice stage in which the court determines . . . whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery."  *Lynch v. United Service Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).  At this first step, the court uses a "relatively lenient evidentiary standard to determine whether a collective action is appropriate."  *Mentor v. Imperial Parking Systems, Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007).  "The court may send . . . notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Myers*, 2010 WL 4227452, at *13 (quoting *Hoffman*, 982 F. Supp. at 261); *Gjurovick v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003).  "The 'modest factual showing' cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist."  *Myers*, 2010 WL 4227452, at *13 (internal quotation marks and citations omitted) (emphasis in original); *see also Lynch*, 491 F. Supp. 2d at 368 (describing plaintiff's burden as "very low" and "minimal"); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).  "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Lynch*, 491 F. Supp. 2d at 368.  Therefore, "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."  *Id.*

Once a court is satisfied that the first-stage inquiry has been satisfied, it conditionally certifies the class and orders notice to putative class members, who are given the opportunity to opt in. *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008). A district court's authority to facilitate such notice is well-recognized. *See Myers*, 2010 WL 4227452, at *13; *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1979); *see also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (recognizing discretion of the district court to facilitate notice to potential plaintiffs under the Age Discrimination in Employment Act, which incorporates 29 U.S.C. § 216(b)). "Once notice is accomplished, the action proceeds as a collective action throughout the discovery process." *Lynch*, 491 F. Supp. 2d at 368.

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 2010 WL 4227452, at *13. This second-stage inquiry utilizes a "more stringent factual determination as to whether the members of the class are, in fact, similarly situated." *Lynch*, 491 F. Supp. 2d at 368. The inquiry is more stringent at this stage because the court "is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." *Gortat v. Capala Brothers, Inc.*, No. 07-CV-3629 (ILG), 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010) (emphasis in original). After conducting the second-stage analysis, the court can "decertify the class or divide it into subclasses, if appropriate." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007). Because courts retain the ability to reevaluate whether the plaintiffs are similarly situated at the second stage, the first-stage determination is merely "preliminary" and

subject to reversal, explaining why the plaintiff's first-stage burden is low.  *See Lynch*, 491 F. Supp. at 368; *ABC Carpet*, 236 F.R.D. at 197.

## II. Heightened Scrutiny

As a threshold matter, EDS argues that the Court should skip the lenient first-stage analysis and apply the more stringent second-stage analysis instead.  Because plaintiffs have conducted some discovery, defendant argues that the Court now has a sufficient factual record to conduct the more searching inquiry typically done at the second stage.  (*See* Def.'s Mem. at 15-18.)

EDS's contention conflicts with the general practice of courts in this Circuit.  Even where the parties have undertaken substantial discovery, our courts have continued to use the first-stage certification analysis.  *See, e.g.*, *Gortat*, 2010 WL 1423018, at *10 ("The heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated.") (emphasis in original); *Mendoza v. Casa de Cambio Delgado*, No. 07cv02579 (HB), 2008 WL 3399067, at *1 n.3 (S.D.N.Y. Aug. 12, 2008) ("Although several depositions have been taken and numerous documents produced, the certification analysis remains in the first stage of the two-step certification process . . . ."); *Rubery*, 569 F. Supp. 2d at 337 ("[N]otwithstanding the substantial class discovery that has taken place, it would be inappropriate . . . to require plaintiff to meet a more stringent standard than that typically applied at the early stages of litigation before discovery is complete.") (internal quotation marks omitted); *see also Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295 (GEL), 2007 WL 2873929, at *3 (S.D.N.Y. Oct. 2, 2007) ("[I]t would be inappropriate to make more than a 'preliminary determination' at this time, or to

10

require plaintiff to meet a more stringent standard than that typically applied at the early stages of litigation.").

Defendant cites two cases within this Circuit in support of its contention that "[o]nce an adequate factual record pertaining to § 16(b) certification has been developed through discovery, courts routinely recognize that the inception standard is inapplicable even in regard to first phase certification motions." (Def.'s Mem. at 16.) First, EDS cites *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008), asserting that the court there "applied a heightened level of scrutiny and denied § 16(b) certification based on evidence revealed in just five depositions and 6,000 documents produced by the defendant." (Def.'s Mem. at 16.) Defendant's reliance on *Amendola* is misplaced. *Amendola* did not proceed to the second-stage inquiry because of the amount of discovery that had occurred. Rather, *Amendola* reinterpreted the first-stage inquiry to hold that "where . . . a defendant employer shows . . . that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice . . . ." *Amendola*, 558 F. Supp. 2d at 467. *Amendola* offered no direct citation for its holding that a court may refuse to authorize notice based on a merits analysis, but in a footnote cited *In re Initial Pub. Offering Sec. Litigation ("In re IPO")*, 471 F.3d 24 (2d Cir. 2006), which held that in Rule 23 class actions, a court's obligation to determine that each Rule 23 requirement has been met is not lessened by overlap between such requirements and a merits issue. *Amendola*, 558 F. Supp. 2d at 467 n.9. In general, courts have scrupulously avoided conflating Rule 23 requirements with FLSA collective action requirements, but *Amendola* seeks to meld the two together. *See, e.g.*, *Cuzco*, 477 F. Supp. 2d at 632; *Young*, 229 F.R.D. at 54. It also appears from the Second Circuit's recent decision in *Myers* that the first-stage inquiry is unaffected by *In re IPO*; that test continues to use

a lenient standard in evaluating plaintiff's showing of being "similarly situated." *Myers*, 2010 WL 4227452, at *13. The Court therefore declines to follow *Amendola*'s approach.

Second, EDS cites to *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316 (PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006). But *Torres* involved a situation in which all fact discovery had been completed. *See* Memorandum of Defendants in Opposition to Motion for Class Certification and Collective Action Notice at 7, *Torres*, 2006 WL 2819730, ECF No. 148 ("Here, *all fact discovery has been completed*.") (emphasis in original); *see also Torres*, 2006 WL 2819730, at 7 n.7 ("The proceedings in this case do not mirror the traditional two-stage process described. Plaintiffs moved for certification of collective action class after discovery had already been conducted."). Here, in contrast, discovery has been limited to those issues that arose on the summary judgment motions preceding this motion and to that which was relevant to first-phase certification. *Torres* simply does not apply. Moreover, not all courts in this Circuit have followed *Torres*. *See Gortat*, 2010 WL 1423018, at *9 n.12 ("In one case cited by the magistrate judge, *Torres* . . . , the court explicitly endorsed the application of heightened scrutiny in a post-discovery, but pre-notice, context. . . . This Court declines to follow *Torres*.").

EDS also cites to several out-of-Circuit cases to support its position that heightened scrutiny applies here because of the amount of discovery that has taken place. However, in three of the cases cited, *Harris v. FFE Transportation Services, Inc.*, No. Civ. A. 3:05cv0077-P, 2006 WL 1994586 (N.D. Tex. May 15, 2006), *England v. New Century Financial Corp.*, 370 F. Supp. 2d 504 (M.D. La. 2005), and *Basco v. Wal-Mart Stores Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004), the decisions contained alternative holdings—one refusing to certify the class based on a first-stage analysis and one refusing to certify based on a second-stage analysis. *See Harris*, 2006 WL 1994586, at *3-5; *England*, 370 F. Supp. 2d at 509 ("[T]he

12

Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter.") (quoting *Basco*, 2004 WL 1497709, at *4); *Basco*, 2004 WL 1497709, at *5-8.  None of these decisions, therefore, rested its holding solely on the second-stage analysis. In another case EDS cites, *Baroni v. BellSouth Telecommunications, Inc.*, No. Civ. A. 02-009, 2004 WL 1687434 (E.D. La. July 27, 2004), the parties "agree[d] that no additional evidence need be introduced at a class and collective action certification hearing, . . . and that the motion for class and collective certification is to be submitted on the basis of the motion, memoranda of counsel, and documentary exhibits."  2004 WL 1687434, at *11.  This is not the case here. Finally, the last case EDS cites for its heightened scrutiny argument, *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957 (W.D. Mich. 2009), appears to apply the same standard that courts in this Circuit apply in a first-stage analysis.  *Compare Pacheco*, 671 F. Supp. 2d at 960 ("Where the plaintiffs have been afforded discovery on the issue of whether or not the action should proceed as a collective action, courts typically apply a more restrictive, but still lenient standard, requiring the plaintiffs to demonstrate at least 'modest' factual support for the class allegations in their complaint.") *with Myers*, 2010 WL 4227452, at *13 (using the "modest factual showing" standard); *Lynch*, 491 F. Supp. 2d at 368 ("Plaintiff need only make a modest factual showing that plaintiff and potential collective action members were victims of a common policy or plan that violated the law.") (internal quotation marks omitted), *and Cuzco*, 477 F. Supp. 2d at 633 (using the "modest factual showing" standard).  Given that courts in this Circuit continue to apply the first-stage test until at least the completion of fact discovery, and the inapplicability of the cases EDS cites, this Court will apply the more lenient first-stage test, although it will consider the evidence obtained in discovery and submitted by both parties in that analysis.  *See Cuzco*, 477 F. Supp. 2d at 632 n.3 ("Since discovery is ongoing here and both

parties have submitted evidence gathered in discovery in support of their positions, this Court

will consider the additional information in making the first-step determination.").

### III. First-Stage Analysis

Plaintiffs seek to certify three "classes" with exempt job codes as follows:[3]

**Class A: Service Delivery Job Family –** consisting of Systems Administrators (34060, 34070, 34080); Telecommunications Analysts (34500, 34510, 34520), and Service Center Analysts (34530, 34540, 34550)

**Class B: Technical Delivery Job Family –** consisting of Infrastructure Analysts (34260, 34270, 34280), and Information Analysts (34330, 34200, 34210, 34220); and

**Class C: Corporate Job Family** – consisting of Information Security Analysts (33700, 33710, 33720, 33730).

(Pl.'s Mem. at 3.)

### A. *Myers* and the First-Stage Test

Before applying the first-stage test to these putative collective action groups, it is

necessary to determine how the first-stage test is applied in an FLSA exemption case, since the

parties dispute the relevant standard.  Plaintiffs maintain that they have satisfied their burden

because they "have shown that EDS has the requisite 'uniform business practice'– EDS' 'Job

Analysis' classification system."  (Pl.'s Reply at 7 (quoting *Damassia v. Duane Reade, Inc.*, No.

04 Civ. 8819 (GEL), 2006 WL 2853971, at *5 (S.D.N.Y. Oct. 5, 2006)).)  EDS, in contrast,

contends that "numerous courts have held that putative § 16(b) class members cannot be

similarly situated where their duties are covered by even *one* exemption."  (Def.'s Mem. at 22

(emphasis in original).)  Under that standard, the Court would have to do at least a preliminary

analysis of the FLSA exemptions as part of the first-stage inquiry.

---

[3] These are not true "classes," but for convenience's sake, and because the plaintiffs have so styled them, this opinion will refer to "Classes" A, B, and C.

The Second Circuit's recent opinion in *Myers*, however, belies EDS's argument.  "In a FLSA exemption case," plaintiffs satisfy their burden "by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' . . . who are classified as exempt pursuant to a common policy or scheme."  *Myers*, 2010 WL 4227452, at *13 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)).  It is not necessary, therefore, for plaintiffs to defend against arguments that individualized inquiries may predominate or that an FLSA exemption covers the plaintiffs at this stage.  These arguments, rather, are left to the second stage.  *See, e.g.*, *Ravenell v. Avis Budget Car Rental, LLC*, No. 08-CV-2113 (SLT)(ALC), 2010 WL 2921508, at *6 (E.D.N.Y. July 19, 2010) ("To be sure, [defendant] has referenced some differences that are pertinent to the Plaintiffs' claims regarding the managerial exemption. However, as explained above, Plaintiffs have met their burden under the preliminary standard for conditional certification, and [defendant] cannot prevent the Plaintiffs from proceeding as a collective action by relying on the declarations it has submitted."); *Parks v. Dick's Sporting Goods*, No. 05 Civ. 6590 (CJS), 2007 WL 913927, at *4 (W.D.N.Y. Mar. 23, 2007) ("Although defendant has cited a number of cases in which district courts denied conditional certification because they found that class certification would require a fact-specific inquiry into potential class members' job duties, . . . the Court finds . . . that such considerations should be addressed later, at the second stage of the certification analysis."); *Herring v. Hewitt Associates*, Civ. No. 06-267 (GEB), 2007 WL 2121693, at *8 (D.N.J. July 24, 2007) ("While Defendant claims that the highly individualized positions of the benefits analysts prevent this case from being treated as a collective action, courts have permitted exemption lawsuits to be treated as collective actions as

long as class members are found to be similarly situated at the notice stage.") (internal citations omitted).

At oral argument, EDS argued that this would be a misreading of *Myers*. According to EDS, *Myers* instead emphasizes "that the exemption inquiry requires examination of the duties that the employee actually performs, and they involve evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria." *Myers*, 2010 WL 4227452, at *8 (internal quotation marks and citations omitted). Because *Myers* noted that Department of Labor "regulations make clear that [exemption] questions should be resolved by examining the employees' actual job characteristics and duties," EDS maintains that that inquiry is also required here. *Id.* at *7. These excerpts from the *Myers* opinion, however, rest squarely within its discussion of the Rule 23 predominance requirement, not its discussion of § 16(b) collective actions. Although EDS urges a blending of the rationales behind the two "admittedly similar" requirements, *Myers* is clear that the first-stage collective action "question is quite distinct from the question whether plaintiffs have satisfied the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes in the eventual action." *Id.* at *13. It seems unwarranted, therefore, to extrapolate a rule of decision for deciding first-stage collective action certification motions from *Myers*'s Rule 23 discussion.

On the other hand, plaintiffs' interpretation of their burden creates a lower standard than that which *Myers* endorsed. Plaintiffs contend that their showing of a "uniform business practice" in EDS's "Job Analysis" system is sufficient, but according to *Myers*, plaintiffs must show that they are similarly situated not only with respect to the employer's conduct toward them, but also in their job responsibilities. At oral argument, plaintiffs' counsel conceded that

*Myers* set forth this two-pronged inquiry.  The test articulated by *Myers*, therefore, requires plaintiffs in FLSA exemption cases to show both that there are other employees who are similarly situated with respect to their job requirements and pay provisions, and that they are classified as exempt pursuant to a common policy or scheme.  That showing is sufficient for court-facilitated notice, and courts are not required to engage in a rigorous analysis of individualized responsibilities once this showing has been made.

   **B.  Application of the *Myers* Test**

   Plaintiffs have satisfied their burden in this case.  First, they have shown that potential plaintiffs were classified as exempt pursuant to a common policy or scheme, namely EDS's "job analysis" resulting in their classification as exempt.  (*See* Pl.'s Reply at 7-8.)  It is undisputed that all of the proposed class members are paid on a salaried basis, classified as exempt, ineligible for overtime pay, and do not receive overtime pay; and further, that their job codes determine their exempt status throughout the United States.  (*See* Evans Dep. at 131-32, 136-37, 140.)  EDS argues that plaintiffs "fail to identify a particular EDS policy or practice that resulted in all 19,500 proposed class members being misclassified as exempt."  (Def.'s Opp'n at 27.)  But plaintiffs' showing is sufficient to demonstrate a common policy or scheme classifying employees as exempt.  *See Lynch*, 491 F. Supp. 2d at 370 (finding that because "the policies and practices relative to the misclassification of [plaintiffs] do not vary, but rather affect all [plaintiffs] the same nationwide," the plaintiff had sufficiently alleged a common policy or plan); *Young*, 229 F.R.D. at 55 (finding it sufficient to show that the defendant "classified [a position] as exempt from the FLSA and that it did in fact have a policy not to compensate [employees in that position] for hours worked in excess of 40 hours per week").  Furthermore, defendant's argument on this prong of the test is largely a rehash of its argument about the individualized

17

responsibilities of the potential plaintiffs, not a claim that EDS did not have a uniform policy of classifying potential plaintiffs as exempt.  To the extent that this argument is relevant, it applies to the prong relating to similarity of job requirements and pay provisions, not to the one about defendant's common policy or scheme.

Plaintiffs have advanced two arguments to show that they are similarly situated with respect to job duties and pay provisions.  First, plaintiffs argue that because all opt-in and potential plaintiffs share computer-related responsibilities in a broad sense, they are similarly situated.  For example, plaintiffs assert that employees in Class A are similarly situated to each other because they "perform[] non-managerial technical support work that does not involve running EDS' business; i.e., have as their primary duties installing, maintaining, and/or supporting computer hardware or software."  (Pl.'s Mem. at 7.)  They assert that Class B members "all perform similar non-managerial duties consisting of installing, maintaining, and/or supporting computer hardware and/or software."  (Pl.'s Mem. at 10.)  Class C members are alleged to be similarly situated because they "performed the same non-managerial duties related to access to the computer networks, providing proper passwords or resetting the passwords of the users of the networks, virus protection and quarantine of websites that have been attacked by viruses, adding websites to a firewall, installing virus protection and detecting and scanning for viruses on end users [sic] computers."  (Pl.'s Mem. at 12.)  EDS argues that these descriptions use "imprecise, meaningless terms."  (Def.'s Opp'n at 24.)  Additionally, because plaintiffs describe the responsibilities of both Class A and B members as "installing, maintaining, and/or supporting computer hardware and/or software," EDS maintains that the "'install/maintain/support' mantra is meaningless in terms of describing exempt duties."  (*Id.* at 24.)

18

Defendant has the better of the argument with respect to these descriptions of potential class members' responsibilities. If the Court were to certify a collective action based on those descriptions, it would make the "job duties and pay provisions" prong of the first-stage test in FLSA cases an virtually useless test in the information technology industry. "Installing, maintaining, and/or supporting computer hardware and/or software" could include both a low-level technician who checks whether computers are switched on and a programmer who writes software patches involving complex cryptographic code.

Plaintiffs' stronger argument relies on EDS's own internal structure. According to plaintiffs, because EDS's "Job Analysis system" was intended to ensure compliance with labor laws, including the FLSA, "EDS knew full well that the job codes assigned to individuals on a prescribed, systematic basis whose importance was emphasized had significance for FLSA purposes." (*See* Pl.'s Mem at 5.) Mindful of the FLSA implications of job coding, "EDS groups employees who perform similar work into . . . job codes." (Pl.'s Mem at 4.) Plaintiffs argue that since EDS itself assigned these job codes to its employees, emphasizing both the FLSA exemption implications of incorrect matching and the importance of creating a substantial match between actual duties performed and the job code assigned, that the use of job codes to group "similarly situated" plaintiffs together is appropriate. The Court agrees.

Plaintiffs are required only to make a "modest" factual showing, and EDS's own documentation indicates that "[g]etting the exemption status right is the first and most important step" in selecting an employee's job code and that job codes are "used to identify a given set of duties and responsibilities assigned to individuals whose work is of the same nature and level." (*See* Lesser Decl. Ex. 33 at 4; Lesser Decl. Ex. 43 at 3.) All job codes were associated with job descriptions that had to "be broad enough for use throughout EDS." (Lesser Decl. Ex. 40 at 8.)

"Plaintiffs need not show that they and [other potential plaintiffs] are identically situated," only similarly situated. *Hallissey v. America Online*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008).  Plaintiffs have carried their low burden on this prong with respect to employees sharing a single job code by showing that the EDS employees within a given job code share the same job description, and that EDS relied upon these job codes in determining exemption status.

EDS further argues that "Plaintiffs' reliance on EDS job codes for class certification . . . is incompatible with the merits of their claims."  (Def.'s Opp'n at 29.)  In support of its argument, EDS relies on the fact that some of the job codes involved here (1) were adjudicated as exempt in a separate class action under California law and (2) are associated with job descriptions that list some exempt duties.  *See generally Heffelfinger v. Electronic Data Systems Corp.*, 580 F. Supp. 2d 933 (C.D. Cal. 2008) (awarding summary judgment to EDS on the issue of whether employees in that action were exempt under California law); (Wyman Decl. Ex. 43.)  These facts certainly increase plaintiffs' burden on the merits of their claim, but a merits consideration is inappropriate at this stage of the litigation.  *Lynch*, 491 F. Supp. 2d at 368.  Plaintiffs' reliance on EDS job codes, therefore, is justified.

Finding that employees within a single job code are similarly situated, however, does not answer the question of whether the Court should certify plaintiffs' proposed classes.  Plaintiffs have not sought to certify collective actions composed of individual job codes, but of whole job families.  Therefore, to answer that question, the Court must address three related, but distinct "similar job duties questions": first, whether employees within a single job code (e.g., Service Center Analyst (34530)) are similarly situated in that respect; second, whether employees within a single job progression (e.g., the Service Center job progression: Service Center Analysts

(34530), Service Center Analysts Advanced (34540), and Service Center Analysts Senior (34550)) within a job family are similarly situated; and third, whether employees in different job progressions within the same job family (e.g., the System Administrator, Telecommunications Analyst, and Service Center job progressions within the Service Delivery job family) are similarly situated.

Plaintiffs' argument recited thus far answers only the first of these questions. EDS argues that the answers to the other questions must be in the negative. According to EDS, even assuming that employees within a given job code are similarly situated to each other, it does not follow that employees within a given job family, which contains multiple job codes, are also similarly situated. Plaintiffs counter that "[n]otwithstanding that they had different job codes, they were . . . part of the same job progression in the same job family, which, as EDS acknowledges, means succeeding levels of similarly situated jobs that become more complex and require greater knowledge." (Pl.'s Reply at 6.)

To the extent that EDS's argument relies solely on the presence of multiple job codes existing within one job family, it fails, as "[c]ourts routinely grant conditional certification of multiple-job-title classes such as Plaintiffs' class." *Lewis v. Wells Fargo*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009). This does not mean that both the second and third questions must automatically be answered in the affirmative. But plaintiffs can rely on EDS's job code structure to prove that employees in a given job progression are similarly situated to each other; this answers the second question in the affirmative. A single job progression is composed of a series of job codes that represent related work at different levels of expertise; ascending job codes within a job progression represent similar duties commensurate with greater experience, not a wholesale difference in job duties. *Cf. Richards v. Computer Sciences Corp.*, No. 3:03cv630

21

(DJS), 2004 WL 3517039, at *4 (D. Conn. Sept. 28, 2004) (certifying a collective action
containing two levels of Customer Support Analysts ("CSA") because "CSAs Level II are
merely a more expansive version of CSAs Level I and not a unique or more skilled class of
employee").

However, this structure does not show that employees in different job progressions, even
if in the same job family, are similarly situated, so the third question must be answered in the
negative.  A job family contains multiple job progressions.  (*See* Lesser Decl. Ex. 36.)  The
"Service Delivery" job family that plaintiffs seek to certify, for example, appears to include
"Business Process Improvement" and "Business Service Analyst" job progressions, whose
duties, at least from the job titles themselves, would appear not to be similar to the Service
Center Analysts, Telecommunications Analysts, and Systems Administrators that plaintiffs seek
to include in Class A.  (*See id*.)  This implies that the third question, whether different job
progressions can be included in a single class, should be answered in the negative.

The Court finds it appropriate, therefore, to certify each job progression that plaintiffs
identify as containing potential plaintiffs, rather than to certify classes by job family.  Although
subdivision is typically done at the second stage of litigation, because plaintiffs rely on EDS's
job classification system, and because their reliance is justified only up to the point of specific
job progressions, rather than whole job families, the Court finds it appropriate to subdivide Class
A into the job progressions of Systems Administrators, Telecommunications Analysts, and
Service Center Analysts, and Class B into Infrastructure Analysts and Information Analysts.  *See*
*Rubery*, 569 F. Supp. 2d at 337-38 (subdividing the collective action at the first stage); (*see also*
Pl.'s Reply at 12 n.8 (arguing for the creation of subclasses if the Court does not wholesale

certify the classes as presented).)  Class C need not be subdivided as it contains only a single job progression.

It may very well be that job duties within a given job code or job progression vary too much to allow an efficient resolution of claims.  These inquiries, however, are to be addressed at the second stage of collective-action certification.  It is sufficient here that plaintiffs have made a modest showing that they share similar duties and are uniformly subject to EDS's policy of classifying them as exempt.

## IV. Form of Notice

Plaintiffs have included a proposed notice to be sent to potential class members, but EDS has indicated that it objects to the form of the notice.  (Def.'s Opp'n at 30 n.13.)  The parties did not address the issue of the propriety of the notice extensively in their papers or at oral argument.  Accordingly, the Court declines to address the issue of the form of notice at this time.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part plaintiff's motion to certify

**[06cv3530 Docket No. 140, 08cv10409 Docket No. 87]** this action as a collective action.  The

parties are directed to confer about the form and content of the notice that will be sent to

potential opt-in plaintiffs.  A joint proposed notice shall be submitted to this Court within three

weeks of this opinion.  If the parties cannot agree on a form of notice, they shall submit letter

memoranda by that date.

SO ORDERED.

Dated: New York, New York
       December 1?, 2010

_____
Richard J. Holwell
United States District Judge