UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KELLEY CUNNINGHAM**, *et al.*, <br> Plaintiffs, <br> vs. <br> **ELECTRONIC DATA SYSTEMS CORP.**, *et al.*, <br> Defendants. | CASE NO:  1:06-CV-03530-LAP |
| **BRIAN STEAVENS**, *et al.*, <br> Plaintiffs, <br> vs. <br> **ELECTRONIC DATA SYSTEMS CORP.**, <br> Defendant. | CASE NO. 1:08-CV-10409-LAP |
| **JOHN SALVA, ERNEST CLEMENTS, and JEROME VINET,** individually and on behalf of all other individuals similarly situated, <br> Plaintiffs, <br> **vs.** <br> **HEWLETT-PACKARD COMPANY** <br> **Defendant.** | CASE NO. 1:14-CV-07484-UA |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION**

Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:    (914) 934-9200
Facsimile:    (914) 934-9220

*Attorneys for Plaintiff and Settlement Classes*

Other Counsel Listed on Signature Page

Lisa A. Schreter, Esq.
Littler Mendelson, P.C.
3344 Peachtree Road, N.E.
Suite 1500
Atlanta, Georgia 303326
404-760-3938

John A. Ybarra
Littler Mendelson, P.C.
321 N. Clark Street, Suite 1000
Chicago, Illinois  60654
312-795-3207
*Attorneys for Defendant*

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

SUMMARY OF THE SETTLEMENT TERMS ................................................. 9

    I.    The Settlement Classes ................................................................. 9

    II.    The Settlement Fund .................................................................. 10

    III.    Releases ...................................................................................... 11

    IV.    Class Certification ..................................................................... 11

    V.    Allocation Formula ................................................................... 11

    VI.    Attorneys' Fees and Costs ........................................................ 12

    VII.    Service Payments to the Named Plaintiffs ............................... 13

    VIII.    Settlement Claims Administrator .............................................. 13

CLASS ACTION SETTLEMENT PROCEDURE ............................................. 13

ARGUMENT .................................................................................................... 15

    I.    The Court Should Grant Preliminary Approval of the Proposed Settlement ....... 15

        A.    The Legal Standards for Preliminary Approval ....................... 15

    II.    The Classes Should Be Certified For Settlement Purposes ................. 26

        A.    The Rule 23(a) Factors Are Met .............................................. 27

            1.    Numerosity ................................................................... 27

            2.    Commonality and Typicality ....................................... 28

            3.    Adequacy ...................................................................... 28

        B.    The Rule 23(b)(3) Factors Are Met ......................................... 29

    III.    The Proposed Notice to the Members of the Settlement Classes Is Adequate and Satisfies Due Process ....................... 31

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

IV.   Plaintiffs' Counsel Should Be Appointed Class Counsel ................................... 32

CONCLUSION ............................................................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Achtman v. Kirby, McInerney Squire,*
464 F.3d 328 (2d Cir. 2006)..................................................................................31

*Alli v. Boston Mkt. Corp.,*
10-cv-0004, Order (D. Conn. Apr. 12, 2012) ......................................................12

*Amchem v. Windsor Prods.,*
521 U.S. 591 (1997).............................................................................................30

*Ayers v. SGS Control Servs.,*
2008 U.S. Dist. LEXIS 69307 (S.D.N.Y. Sept. 9, 2008).....................................18

*Ayers v. SGS Control Servs., Inc.,*
2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb. 27, 2007).....................................20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
222 F.3d 52 (2d Cir. 2000)...................................................................................28

*Bell v. Citizens Fin. Group, Inc.,*
2:10-cv-00320 (W.D. Pa. Apr. 21, 2013) ............................................................22

*Blackmon v. Brookshire Grocery Co.,*
835 F.2d 1135 (5th Cir. 1988) .............................................................................20

*Brooks v. Am. Export Indus., Inc.,*
1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977).....................................24

*Cabrera v. 211 Garage Corp.,*
2008 U.S. Dist. LEXIS 67050 (S.D.N.Y. Aug. 22, 2008)....................................26

*Capsolas v. Pasta Res. Inc.,*
2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) .....................................12

*Caridad v. Metro-N. Commuter R.R.,*
191 F. 3d 283 (2d Cir. 1999)................................................................................28

*Central States Southeast v. Merck-Medco,*
504 F.3d 229 (2d Cir. 2007).................................................................................27

*Chatelain v. Prudential-Bache Sec., Inc.,*
805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................16

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ........................................................ passim

*Clark v. Ecolab,*
   2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. May 11, 2010) ................................. 12, 18

*Clark v. Ecolab Inc.,*
   2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) ............................. 17

*Clements v. Serco, Inc.,*
   530 F.3d 1224 (10th Cir. 2008) ...................................................... 20

*Cnty. of Suffolk v. Long Island Lighting Co.,*
   710 F. Supp. 1422 (E.D.N.Y. 1989), *aff'd,* 907 F.2d 1295 (2d Cir. 1990) ............ 26

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
   502 F.3d 91 (2d Cir. 2007) .......................................................... 30

*Craig v. Rite Aid Corp.,*
   2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013) ................................. 23

*Cruz v. Lyn-Rog Inc.,*
   754 F. Supp. 2d 521 (E.D.N.Y. 2010) ................................................ 26

*Cunningham, et al. v. Electronic Data Systems, Corp.,*
   Case No. 06-cv-3530-LAP (S.D.N.Y.) ............................................. passim

*deMunecas v. Bold Food, LLC,*
   2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ............................. 12

*Desmond v. PNGI Charles Town Gaming, L.L.C.,*
   630 F.3d 351 (4th Cir. 2011) ........................................................ 20

*Duchene v. Michael Cetta, Inc.,*
   2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) ............................. 12

*Faican v. Rapid Park Holding Corp.,*
   2010 U.S. Dist. LEXIS 64382 (E.D.N.Y. June 29, 2010) ............................. 12

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................... 29, 30

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Gilliam v. Addicts Rehab. Ctr. Fund,*
  2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ....................................12

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000).................................................................................17

*Goldstein v. North Jersey Trust Co.,*
  39 F.R.D. 363 (S.D.N.Y. 1966) .........................................................................27

*Green v. Harbor Freight Tools USA, Inc.,*
  888 F. Supp. 2d 1088 (D. Kan. 2012) ................................................................21

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968)................................................................................30

*Guinup v. Petr-All Petroleum Corp.,*
  2010 U.S. Dist. LEXIS 86280 (N.D.N.Y. Aug. 23, 2010) ..................................21

*Heffelfinger v. Electronic Data Sys. Corp.,*
  No. 2:07-cv-00101-MMM-E (C.D. Cal. Feb. 26, 2013).....................................21

*Henry v. Quicken Loans, Inc.,*
  No. 2:04-cv-40346 (E.D. Mich. 17, 2011)..........................................................22

*In re Agent Orange Prod. Liab. Litig.,*
  818 F.2d 145 (2d Cir. 1987)................................................................................28

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), .................................................................19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  574 F.3d 29 (2d Cir. 2009)..................................................................................29

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Litig.,*
  55 F.3d 784 (3d Cir. 1995)..................................................................................27

*In re IPO Sec. Litig.,*
  243 F.R.D. 79 (S.D.N.Y. 2007) ..........................................................................16

*In re Ivan F. Boesky Sec. Litig.,*
  948 F.2d 1358 (2d Cir. 1991)..............................................................................16

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*In re Sumitomo Copper Litig.,*
    189 F.R.D. 274 (S.D.N.Y. 1999) ...........................................................................16

*In re Traffic Exec. Ass'n,*
    627 F.2d 631 (2d Cir. 1980)...................................................................................17

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004)...........................................................................15, 19

*In re Warner Commun. Sec. Litig.,*
    798 F.2d 35 (2d Cir. 1986)....................................................................................17

*Jenkins v. TSA Stores, Inc.,*
    No. 09-cv-02224 (JFB) (ETB) (E.D.N.Y.) ...........................................................25

*Joel A. v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000)..................................................................................25

*Johnson v. Big Lots Stores, Inc.,*
    561 F. Supp. 2d 567 (E.D. La. 2008) ....................................................................21

*Johnson v. Brennan,*
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011).....................................13

*Knott v. Dollar Tree Stores, Inc.,*
    897 F. Supp. 2d 1230 (N.D. Ala. 2012) ................................................................21

*Lynn's Food Stores, Inc. v. United States,*
    679 F.2d 1350 (11th Cir. 1982) ............................................................................18

*Marisol A. v. Guiliani,*
    126 F.3d 372 (2d Cir. 1997)..................................................................................28

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F.3d 423 (2d Cir. 2007)..................................................................................31

*Maywalt v. Parker & Parsley Petroleum Co.,*
    67 F.3d 1072 (2d Cir. 1998)..................................................................................16

*McBean v. City of New York,*
    228 F.R.D. 487 (S.D.N.Y. 2005) ...........................................................................30

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*McBean v. City of New York,*
   233 F.R.D. 377 (S.D.N.Y. Feb. 7, 2006) ...............................................................19

*McMahon v. Olivier Cheng Catering and Events,*
   2009 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) ..................................12, 18

*Mian v. GPM Investments, LLC,*
   2012 U.S. Dist. LEXIS 121048 (D. Conn. Aug. 27, 2012) ....................................20

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
   2009 U.S. Dist. LEXIS 27899, (S.D.N.Y. Mar. 31, 2009) ...............................12, 18

*Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.,*
   2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb 9, 2009).........................................12

*Perkins v. So. New Eng. Tel. Co.,*
   2011 U.S. Dist. LEXIS 109882 (D. Conn. Sept. 27, 2011) ...................................20

*Perkins v. So. New England Tel. Co., Inc.*
   No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011).................................22

*Phillips v. Tacala, LLC,*
   2012 U.S. Dist. LEXIS 112745 (D. Ala. Aug. 10, 2012) ......................................21

*Pippins v. KPMG LLP,*
   2012 U.S. Dist. LEXIS 173918 (S.D.N.Y. Nov. 29, 2012) ...................................21

*Polar Int'l Brokerage Corp. v. Reeve,*
   187 F.R.D. 108 (S.D.N.Y. 1999) ...........................................................................16

*Prasker v. Asia Five Eight LLC,*
   2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010)...........................................12

*Reyes v. Altamarea Grp.,*
   2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) ...................................13

*Reyes v. Buddha-Bar NYC,*
   2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009)......................................12

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)..................................................................................27

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Salva v. Hewlett-Packard Co.*,
     Case No. 12-cv-06324 (W.D.N.Y.) .................................................................. passim

*Scott v. SSP Am., Inc.*,
     2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011) ......................................21

*Sewell v. Bovis Lend Lease LMB, Inc.*,
     2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012).................................13, 19

*Spicer v. Pier Sixty LLC*,
     2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012)....................................12

*Stefaniak v. HSBC Bank USA*,
     2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008)...............................12, 18

*Stillman v. Staples, Inc.*,
     2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) .............................20, 22, 24

*Strougo v. Bassini*,
     258 F. Supp. 2d 254 (S.D.N.Y. Apr. 7, 2003) ...............................................24, 25

*Taylor v. Autozone, Inc.*,
     2012 U.S. Dist. LEXIS 10207 (D. Az. Jan. 26, 2012)...........................................21

*Thomas v. Dolgencorp, Inc.*,
     2012 U.S. Dist. LEXIS 46667 (D.S.C. Apr. 3, 2012)............................................21

*Torres v. Gristede's Oper. Corp.*,
     2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ...................................23

*Toure v. Cent. Parking Sys.*,
     2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007).....................................28

*Trief v. Dun & Bradstreet Corp.*,
     840 F. Supp. 277 (S.D.N.Y. 1993) .......................................................................16

*Urnikis-Negro v. Am. Family Prop. Servs.*,
     616 F.3d 665 (7th Cir. 2010) ................................................................................20

*Valerio v. Putnam Assocs., Inc.*,
     173 F.3d 35 (1st Cir. 1999)...................................................................................20

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005)...................................................................15, 24, 25

*Westerfield v. Wash. Mut. Bank,*
  2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 2, 2009).........................................12

*Wolfert v. Transamerica Home First,*
  439 F.3d 165 (2d Cir. 2006)...................................................................32

**FEDERAL STATUTES**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA")............................... passim

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION (FOURTH) **§** 21.632 (2004) ...................................16

*Newberg* § 11.25 .......................................................................17

*Newberg* § 11.27 .......................................................................26

*Newberg* § 11.41 .......................................................................16

**RULES**

FED. R. CIV. P. 23......................................................... ............................... passim

## <u>INTRODUCTION</u>

After over six years of litigation and negotiation that has exacted time, effort, and resources from the parties on both sides of this dispute, the plaintiffs in *Cunningham, et al. v. Electronic Data Systems, Corp.,* Case No. 06-cv-3530-LAP (S.D.N.Y.); *Steavens, et al. v. Electronic Data Systems Corp.*, original Case No. 2:07-cv-14536-LPZ-VMM (E.D. Mich.), *transferred to* 1:08-CV-10409-LAP (S.D.N.Y.); and *Salva v. Hewlett-Packard Co.*, original Case No. 12-cv-06324 (W.D.N.Y.), *transferred to* 1:14-cv-07484-UA, have agreed to settle these lawsuits.

The settlement for which preliminary approval for notice purposes is sought has – beyond any possible debate – been reached only after the matter was comprehensively litigated and then mediated and negotiated over the course of many months using the services of an experienced mediator, Mark Rudy, Esq.  The settlement agreement itself, the "Stipulation and Settlement Agreement" ("Settlement Agreement" hereinafter) a 76-page document (Exhibit A to the accompanying Declaration of Seth R. Lesser ("Lesser Decl.")), was vociferously negotiated by the two sides and alone took several months of negotiation to conclude.

Under this comprehensive negotiated settlement, Plaintiffs in the cases and the members of the proposed Settlement Classes will release all overtime-related Fair Labor Standards Act ("FLSA") and various state law wage and hour claims.  In exchange for this release, and subject to the conditions set out in the settlement agreement, Defendants have agreed to pay a total settlement amount not to exceed $11,800,000.00.

Plaintiffs' counsel, experienced in wage and hour collective and class litigation, believe that the proposed settlement is fair and adequate to their clients and to members of the Settlement Classes.

As noted, the proposed Settlement is the product of hard-fought litigation and well-informed negotiations between the Parties' counsel.  In reaching this agreement, counsel for both sides recognize it is more advantageous to settle this matter now and on the terms reached than to continue with the litigation.  Accordingly, the Parties respectfully request that the Court grant preliminary approval of the proposed settlement.

## BACKGROUND

A.      **Cunningham, et al v. Electronic Data Systems, Inc. and Steavens, et al. v. Electronic Data Systems, Inc.**

On May 10, 2006, Kelley Cunningham and Tammye Cunningham commenced *Cunningham, et al. v. Electronic Data Systems Corp. and American Airlines, Inc.*,., Case No. 06-cv-3530, in the United States District Court for the Southern District of New York.  In their Complaint, the Cunninghams asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of themselves and individuals who had been employed by EDS in particular EDS job families.  The Cunninghams specifically alleged that they and other individuals employed by EDS in particular EDS job families were not properly classified as exempt and were not paid overtime wages for hours worked over 40, and that EDS violated record-keeping provisions of the FLSA.  [*See* Docket No. 1, May 10, 2006, Case No. 1:06-CV-03530-LAP-MHD].  On October 3, 2006, the Cunninghams and American Airlines filed a joint stipulation dismissing American Airlines from the action. [*See* Docket No. 23].

On January 4, 2008, EDS filed a motion for summary judgment arguing that the Plaintiffs were exempt under the air carrier exemption provisions of the FLSA and there was no private right of action for enforcement of FLSA's record-keeping requirements. [*See* Docket No. 27]. On September 30, 2008 the Court granted EDS's motion in part, holding that there is no private right of action with respect to FLSA's record-keeping requirement, but denied EDS's summary

judgment motion with respect to the application of the air carrier exemption. [*See* Docket No. 39]. In January 2009, EDS filed a motion for leave to renew its motion for summary judgment. [*See* Docket No. 40]. The Court granted that motion on March 5, 2009. [*See* Docket No. 47]. On May 6, 2009, EDS filed its renewed motion for summary judgment based upon the air carrier exemption. [*See* Docket No. 58]. On March 31, 2010, the Court denied EDS's renewed motion, holding that the exemption did not apply unless EDS could prove that it performed transportation-related services and that its operations were controlled by an air carrier. [*See* Docket No. 129].

On October 23, 2007, Brian Steavens commenced *Steavens, et al. v. Electronic Data Systems Corp.*, original Case No. 2:07-cv-14536-LPZ-VMM, in the United States District Court for the Eastern District of Michigan. In his Complaint, Plaintiff Steavens asserted similar violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of themselves and individuals who had been employed by EDS in particular EDS job families. Plaintiff Steavens specifically alleged that he and other individuals employed by EDS in particular EDS job families were not properly classified as exempt and were not paid overtime wages for hours worked over 40, as well as ERISA violations. [*See* Docket No. 1, October 23, 2007, Case No. 2:07-cv-14536-LPZ-VMM].

On February 4, 2008, the Complaint in the *Steavens* action was amended to add Tamura L. Goldberg, Daniel Hein, Bartt L. Kuhlmann, Stephen Lenkner, and Rod Deluhery as named Plaintiffs, and to include certain state law claims alleging that the Plaintiffs were not properly classified as exempt and were not paid overtime wages for hours worked over 40. [*See* Docket No. 7, February 4, 2008, Case No. 2:07-cv-14536-LPZ-VMM].

On March 5, 2008, EDS filed a motion to dismiss Plaintiff's ERISA allegations, and on August 12, 2008 the Court granted EDS's motion. [*See* Docket Nos. 14 and 25]. On October 10, 2008, EDS filed a motion to dismiss, or stay the proceedings, in *Steavens* based upon the fact that *Cunningham* was the first-filed collective action involving the same putative collective and the same issues. [*See* Docket No. 30]. The Court denied EDS's motion and, on December 2, 2008, the *Steavens* matter was transferred to Southern District of New York where *Cunningham* was pending. [*See* Docket No. 1, Case No. 1:08-cv-10409-LAP-MHD].

On March 5, 2009, the *Cunningham* and *Steavens* actions were consolidated, for pretrial purposes only, in the United States District Court for the Southern District of New York (collectively, the "*Cunningham* Action"). [*See* Docket No. 48, March 5, 2009, Case No. 1:06-cv-03530-LAP-MHD].   On June 1, 2009, by agreement of the Parties, the Complaint in the *Cunningham* Action was amended to add John Patrick Confar, Michael Snyder, Gregory Brousseau, and Robert Schwab as named Plaintiffs, and to include certain state law claims alleging that the Plaintiffs were not properly classified as exempt and were not paid overtime wages for hours worked over 40.  [*See* Docket No. 72, June 1, 2009, Case No. 1:06-cv-03530-LAP-MHD].

On July 6, 2009, EDS filed a motion to strike Plaintiffs' Request for Rule 23 class certification in *Cunningham*. [*See* Docket No. 88]. On March 31, 2010, the Court denied EDS's motion to strike and held that Rule 23 class certification on state law claims was not incompatible with collective FLSA actions. [*See* Docket No. 130]. On April 4, 2010, EDS filed a motion to deny conditional certification under Section 216(b) of the FLSA. [*See* Docket No. 131].

The Court denied EDS's motion to deny conditional certification under the FLSA and class certification of state law claims, and, on April 7, 2010, the Plaintiffs in the *Cunningham* Action filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 16(b) of the FLSA.  [*See* Docket No. 140, April 7, 2010, Case No. 1:06-cv-03530-LAP-MHD].  The Court held oral argument on the motion in November 2010.

On December 14, 2010, Judge Richard J. Holwell conditionally certified a collective action consisting of all individuals employed by EDS in twenty (20) distinct legacy EDS job codes across six (6) EDS job progressions.  These codes were Information Associate (Code No. 34330), Information Analyst (34200), Information Specialist (34210), Information Specialist Senior (34220), Infrastructure Analyst (34260), Infrastructure Specialist (34270), Infrastructure Specialist Senior (34280), Service Center Analyst (34530), Service Center Analyst Advanced (34540), Service Center Analyst Senior (34550), Systems Administrator (34060), Systems Administrator Advanced (34070), Systems Administrator Senior (34080), Telecommunications Analyst (34500), Telecommunications Analyst Advanced (34510), Telecommunications Analyst Senior (34520), Information Security Analyst (33700), and Information Security Analyst Advanced (33710), Information Security Analyst Senior (33720), and Information Security Master (33730).  [*See* Docket No. 172, December 14, 2010, Case No. 1:06-cv-03530-LAP-MHD, reported at 754 F. Supp. 2d 638].

Following the court authorized notice of the actions, approximately 2,735 individuals across the twenty (20) distinct EDS job codes opted in to the *Cunningham* Action.  On July 5, 2012, the named Plaintiffs in the *Cunningham* Action indicated to Defendant EDS that they did not intend to proceed with their state law claims asserted in their Amended complaints.  On

August 29, 2012, all state law claims were dismissed. [*See* Docket No. 320, August 29, 2012, Case No. 1:06-cv-03530-LAP-MHD].

       **B.**      ***Salva, et al.* v. *Hewlett-Packard Company***

On June 15, 2012, John Salva, Ernest Clements, and Jerome Vinet, who were opt-ins in the *Cunningham* Action, commenced *Salva, et al. v. Hewlett-Packard Company*, Case No. 6:12-cv-06324-CJS, in the United States District Court for the Western District of New York (the "Salva Action"). Plaintiffs asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of themselves and individuals who had been employed by HP in the ITO Service Delivery, Services Information Development, and Technical Consulting job families at HP locations throughout the United States. Plaintiffs specifically alleged that they and other individuals employed by HP in the subject job families between June 16, 2009 to the present were not properly classified as exempt and were not paid overtime wages for hours worked over 40. [*See* Docket No. 1, June 15, 2012, Case No. 6:12-cv-06324-CJS].

       **C.**      **Litigation of *Cunningham*/*Steavens* and *Salva***

There can be no question but that the *Cunningham* and *Salva* Actions were litigated aggressively and contentiously on both sides. Throughout the course of the litigation, the parties have engaged in significant discovery, including numerous depositions, written discovery, and exchange of information and documents. There were 79 depositions and Defendants produced over 1.5 million pages of documents, addressing both EDS and HP matters. No less so, there were multiple discovery disputes, resulting in the exchange of numerous meet-and-confer letters, as well as multiple conferences addressing various discovery disputes, including the scope of discovery, electronically stored information ("ESI"), and the proper statute of limitations. The parties also appeared before the Court a number of times to resolve their discovery disputes. By way of an example, the Court may recall, for instance, a discovery conference in September 2012

at which it had the two parties sit in a conference room for several hours to address a score of electronic discovery issues; notwithstanding the progress reached in that meeting, within weeks, the parties were exchanging dozen page single spaced letters raising new and corollary discovery issues. The nature of the disputes were particularly complex given the nature of the computer-driven work undertaken by the plaintiffs for EDS (and, later HP) and involved such (among other) specific topics as production of metadata for plaintiffs' ESI, how many custodians would be searched, methodologies for searching and preservation of data, including self-collection versus predictive code); migration of data to new systems; what search terms would be used and whether reiterative searches would be undertaken; sources of ESI to be searched and whether they contained relevant information (including ticketing systems, payroll and time-keeping systems); EDS/HP's contracts with third parties; the scope of plaintiffs' discovery obligations, and production of social media posts for selected deponents. During most of 2012, the parties were engaged in detailed ESI discovery and trying to resolve disputes related to discovery of ESI. In the more than 1.5 million pages that were exchanged, the parties exchanged material which included, *inter alia*, job descriptions, personnel files, company policies, payroll records, time records, and emails obtained from deponents' HP-issued computer hard drives. As noted, there were more than 80 depositions. The depositions of putative and opt-ins took place all over the country depending on where they lived and worked.

These depositions, along with the documents produced, provided significant evidence of the job duties that the putatives performed and the manner in which Defendants classified these putatives. Moreover, plaintiffs' counsel interviewed class members to determine the hours they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. Even while the mediation efforts were ongoing, discovery continued. For

instance, after the first mediation sessions was held with Mr. Rudy, the parties agreed to a break in the mediation proceedings (while under the auspices of the stay that had been put in place0 in order to enable Plaintiffs to formulate and serve additional discovery requests concerning specific matters arising out of HP/*Salva* claims which led to more productions of documents and Plaintiffs' counsel interviewing HP employees, while HP, in turn, conducted interviews of the plaintiffs themselves.

There can be no doubt here that Plaintiffs' counsel (and defendants' counsel, too) had a more than sufficient perspective on the claims at issue in the case, including a full and fair opportunity to assess the strength of the claims if these actions proceeded to trial.

### D.      Mediation of *Cunningham*/*Stevens* and *Salva*

In January 2013 and May 2013, the Parties entered into Confidential Mediation Agreements in the *Cunningham* and *Salva* Actions, respectively.  On November 27, 2012, the *Salva* Action was stayed pending mediation.  [*See* Docket No. 35, November 27, 2012, Case No. 6:12-cv-06324-CJS].   On January 3, 2013, the *Cunningham* Action was stayed pending mediation.  [*See* Docket No. 334, January 11, 2013, Case No. 1:06-cv-03530-LAP-MHD]. During the course of mediation and settlement discussions, the Parties exchanged additional documents and information related to merits and damages issues, and participated in joint interviews of corporate witnesses, additional *Cunningham* Opt-ins in each of the *Salva* Job Codes, and supervisors for each of the *Salva* job codes. On August 22, 2013 and December 11, 2013, the Parties engaged in all-day mediation sessions under the direction of court-appointed mediator, Mark S. Rudy, Esq., an experienced class and collective action mediator.

The Parties' settlement negotiations have culminated in this Settlement Agreement.  On September 9, 2014, the Parties jointly moved to transfer the *Salva* Action to the Southern District of New York, which was granted on September 11, 2014, and the parties are moving to

consolidate the *Salva* Action with the *Cunningham* Action before this Court for the purposes of settlement.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    The Settlement Classes

The Settlement being proposed is a hybrid FLSA/state wage claim settlement, the form of which follows in form and structure a number of other similar settlements that have been approved in this Court and in this Circuit.  Included within the Settlement are the individuals who opted-into and joined the conditionally certified collective action in the *Cunningham* and *Steavens* cases (the Cunningham Opt-in Plaintiffs) and the two classes (the "Settlement Classes") certified for settlement purposes:

> (a)    The "CUNNINGHAM SETTLEMENT CLASS" which covers those individuals who opted-into and joined the conditionally certified collective action in the *Cunningham* and *Steavens* cases (who are also referred to as the Cunningham Opt-in Plaintiffs), which class will be releasing FLSA claims;
>
> (b)    The "PUTATIVE SALVA STATE LAW CLASS," which refers to any and all persons employed by HP in the Service Information Developer I (Code No. 00S46F), ITO Service Delivery Consultant I (00S15F), and ITO Service Delivery Consultant II (00S15G) HP job codes (the "Covered Salva Job Codes") in California, Florida, Indiana, Massachusetts, Michigan, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Texas, and/or Virginia from June 16, 2009 through the date of the Preliminary Approval Order, which class will be releasing state law claims; and
>
> (c)    The "PUTATIVE FLSA CLASS," which refers to any and all persons employed by HP in the Service Information Developer I (Code No. 00S46F), ITO Service Delivery Consultant I (00S15F), and ITO Service Delivery Consultant II (00S15G) HP job codes from June 16, 2009 through and including the date of the Preliminary Approval Order, which class will be releasing FLSA claims.

The claims of the two original Cunningham Plaintiffs – Mr. and Mrs. Cunningham themselves – are covered by a separate settlement agreement, which was necessitated by the fact that, as the litigation developed, their claims were not included within the collective action that was certified by the Court in 2010 because (as the Court noted on at least one prior occasion

during pre-trial hearings) they worked in job codes that were separate and apart from those in the collective action.   Despite attempts by the parties to resolve their claims separately prior to resolving the rest of the claims in the litigations, the parties were never able to reach agreement and it was only after the Settlement Classes' claims were settled did the parties negotiate the terms of the Cunninghams' settlement, for which separate court approval shall be requested.  Of note, because their claims did not encompass those of the Settlement Classes, the Cunninghams shall not be requesting any recompense under the terms of the class settlement addressed herein and shall not be seeking any service award for the litigation.

## II.    The Settlement Fund

Defendants have agreed to create a Settlement fund in the amount of $11.8 million to settle the claims of the Settlement Classes.[1]  In summary, from this amount will be deducted court-approved attorneys' fees and expenses for Class Counsel, court-approved service payments for the named Plaintiffs and the court-approved costs of the Settlement Administrator. Individual settlement amounts – the amounts of which are specified to each member of the Settlement Classes in the individualized claim forms that they will receive with this notice (*see* Lesser Decl. Ex. A at Ex. 2 at 2; *see also* Ex. A at Ex. 1 at 8 (pointing this out in the notice) – will be distributed to those members of the Settlement Classes (the "Authorized Claimants") who return timely and valid claim forms and do not opt out of the Settlement.   All taxes and tax expenses normally withheld from an individual's paycheck will be deducted from amounts paid

---

[1]        This is the maximum amount that Defendants shall pay under the Settlement Agreement. They will, separately, be responsible for paying any employer-owed payroll taxes including FUTA and the employer's share of FICA taxes, unemployment insurance and back-up withholding (if applicable), as required by law with respect to settlement payments to the members of the Settlement Classes who submit valid and timely claims.  *See* Settlement Agreement at page 25, section III.D.1-3.

to Authorized Claimants as part of the distribution effectuated by the Settlement Administrator. Settlement Agreement at pages 33-34, section III.E.15-17.

## III.    Releases

Each participating member of the two FLSA Settlement Classes will execute a FLSA release by returning a claim form.  *See* Lesser Decl. Ex. Exhibit A at Ex. 2 Appendix A (form of release).  The Settlement Agreement also provides that every member of the Putative Salva State Law Class who does not timely opt out of the settlement will release his or her wage and hour claims that were or could have been brought in this matter, arising out of the alleged facts, circumstances and occurrences underlying the claims set forth in the *Salva* complaint, including wage and hour claims arising under any state, federal, or local law.  *See* Settlement Agreement at pages 54-55, section III.J.2.

## IV.    Class Certification

Solely for purposes of settlement, the Parties have agreed, subject to Court approval, for collective and class treatment of the Settlement Classes.  Defendants expressly retain their rights to object to certification of this action, or any other wage and hour class or collective action, or any other class action under FED. R. CIV. P. 23 or any other applicable rule, statute, law, or provision.  By entering into this Settlement, Defendants do not admit, and in fact expressly deny, any liability or wrongdoing, as Defendants have maintained that Plaintiffs and the members of the Settlement Classes have not been misclassified, and that they have been properly paid at all times during their employment with Defendants, and therefore that class or collective certification was inappropriate.

## V.    Allocation Formula

Under the Settlement Agreement, each member of the Settlement Classes who returns a timely and valid claim form and who does not opt out will receive an individual settlement

amount under an allocation formula that considers the approximate number of weeks each was employed by Defendants in the positions at issue.  The payments to the members of the Settlement Classes Members will vary proportionally, as each claimant will receive a pro rata share of the net settlement amount based upon the time each was employed during the applicable periods of time.  This method of calculating each member of the Settlement Class's recovery will ensure a fair distribution of the settlement proceeds to the participating members of the Settlement Classes, *see also* pages 23-24, below.

## VI.    Attorneys' Fees and Costs

Under the Settlement Agreement, Class Counsel intends to apply for an award of attorneys' fees and costs, to be paid from the $11.8 Settlement fund.  Defendants will not oppose a fee and costs request that does not exceed 33% of the Total Settlement Amount.[2]

---

[2]      Although Plaintiffs' Counsel's fee application is not presently before the Court, this is the almost universal fee award in wage and hour cases in this Circuit.  *See, e.g.*, *Capsolas v. Pasta Res. Inc.*, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (awarding 33.33% fee in $5.25 million settlement); *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (awarding 33% fee in $8.5 million settlement); *Alli v. Boston Mkt. Corp.*, 10-cv-0004, Order (D. Conn. Apr. 12, 2012) (awarding 33.33% fee in $3 million settlement); *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y. Aug. 23, 2010) (awarding 33% fee in $729,000 settlement); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (awarding one-third fee in $450,000 settlement); *Clark v. Ecolab*, 2009 U.S. Dist. LEXIS 76613, at * 27 (S.D.N.Y. May 11, 2010) (awarding one-third fee in $6 million settlement); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955, at *8 (S.D.N.Y. Sept. 10, 2009) (awarding 32.2% fee in $3.15 million settlement); *Faican v. Rapid Park Holding Corp.*, 2010 U.S. Dist. LEXIS 64382, at *6 (E.D.N.Y. June 29, 2010) (awarding 33.3% fee in $522,000 settlement); *McMahon v. Olivier Cheng Catering and Events*, 2009 U.S. Dist. LEXIS 18913, at *18 (S.D.N.Y. Mar. 2, 2010) (awarding 33% fee in $400,000 settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) (awarding 33% fee in $3.265 million settlement); *Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *7 (S.D.N.Y. Feb 9, 2009) (awarding 33.3% fee in $745,000 settlement); *Prasker v. Asia Five Eight LLC*, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) (awarding 33% of $1.05 million settlement); *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *11 (S.D.N.Y. May 28, 2009) (awarding 33% fee in $710,000 settlement); *Stefaniak v. HSBC Bank USA*, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million settlement); *Westerfield v. Wash.*

## VII.    Service Payments to the Named Plaintiffs

Under the Settlement Agreement, in addition to their individual settlement amounts, the ten named plaintiffs in the *Cunningham/Steavens* and *Salva* cases (aside from the Cunninghams themselves, *see* pages 9-10, above), will receive payments of $7,000.00 in recognition of their services as putative class and collective action representatives, an amount well in line with precedent recognizing the value of individuals' stepping forward to represent classes.[3]

## VIII.    Settlement Claims Administrator

Under the Settlement Agreement, The Garden City Group, Inc., which has served as settlement administrator in multiple prior and similar cases, will serve as Claims Administrator for the Settlement.    All fees and expenses of Garden City Group will be paid from the Total Settlement Amount.

**CLASS ACTION SETTLEMENT PROCEDURE**

Judicial proceedings under FED. R. CIV. P. 23 have an established a defined procedure and specific criteria for settlement approval.    The Rule 23(e) settlement approval procedure describes three distinct steps:

(1)    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

---

*Mut. Bank*, 2009 U.S. Dist. LEXIS 94544, at *13 (E.D.N.Y. Oct. 2, 2009) (awarding 30% of $38 million settlement).

[3]        Such service awards are routinely granted in wage and hour class actions.  *See, e.g.*, S*ewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) (granting service awards of $15,000 and $10,000 to class representatives in a wage and hour class action settlement); *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (granting service awards of $10,000 to class representatives in a wage and hour settlement); *Reyes v. Altamarea Grp.,* 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (granting service awards of $15,000 and $5,000, to class representatives in wage and hour settlement).    The individual who would receive service payments here are John Confar, Gregory Brousseau, Robert Schwab, Brian Steavens, Tamura Goldberg, Daniel Hein, Rod Deluhery, John Salva, Ernest Clements and Jerome Vinet

(2)     Dissemination of mailed and/or published notice of settlement to all affected Class members; and

(3)     A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, Newberg on Class Actions §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").   These procedures safeguard class members' procedural due process rights and enable the Court to fulfill its role as the guardian of class interests.

With this Joint Motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement Agreement, provisionally certifying the Settlement Classes, approving Plaintiff's proposed notice of settlement (the "Settlement Notice"), and authorizing Plaintiff to send it.

The Parties respectfully submit the following proposed schedule for final resolution for the Court's consideration and approval:[4]

- Within 45 days after this Court grants the motion for preliminary approval, Defendants shall provide the third-party claims administrator with the class list, including contact information, for the Cunningham Opt-ins and for the Putative FLSA Class.

- Approximately 73 days after Defendants provides the claims administrator with the class data, the claims administrator shall mail notice of the settlement to the Class Members.

---

[4]     The Parties' proposal presupposes that the Court will preliminarily grant and finally approve the Parties' settlement.  The Parties acknowledge that if this Court or an appellate court denies approval of the settlement, then the parties will returned to their respective positions *nunc pro tunc* as the date of the Stipulation of Settlement.

- In order to participate in this settlement, the class members need to submit a claims form to the claims administrator within 60 days after the notice was postmarked.

- Putative Salva State Law Class Members will have 45 days after the notice is postmarked to opt out of the settlement. Any of those individuals who wish to object to the Settlement Agreement must file his/her objection with the claims administrator within 60 days after the notice is postmarked.

- A hearing be set for the final approval of the Settlement Agreement shortly after the period for submitting a claims form and objections to the Settlement Agreement has expired.

- Once the Court grants final approval of the Settlement, Defendants shall provide funding for the settlement to the claims administrator approximately 40 days after the approval.

- Five days after Defendants fund the settlement, the claims administrator shall mail the settlement checks to the Class Members who have timely submitted a claims form, and those class member will have 180 days to cash those settlement checks.

## ARGUMENT

I.   **The Court Should Grant Preliminary Approval of the Proposed Settlement**

A.   **The Legal Standards for Preliminary Approval**

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").  This is

especially true in complex class action litigation.  *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Courts encourage settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus its resources elsewhere.  *See Castagna v. Madison Square Garden*, L.P., 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating settlement).

Unlike settlements in ordinary suits, the court must approve a settlement of a class action as "fair, reasonable, and adequate."  *See* FED. R. CIV. P. 23(e); *see also Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D. 108, 112-13 (S.D.N.Y. 1999).  Review of a proposed class action settlement is generally a two-step process:  preliminary approval, in which the court reviews the proposed terms of the settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms, and a subsequent "fairness hearing."  *In re IPO Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (*citing* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004)).

Ascertaining the fairness of a proposed settlement is left to the sound discretion of the trial court.  *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1368 (2d Cir. 1991); *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1998).  When exercising its discretion, the court reviews the proposed settlement in light of the strong judicial and public policies that favor settlements.  *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 280 (S.D.N.Y. 1999).  There is a strong initial presumption that a proposed settlement negotiated during litigation is fair and reasonable.  *Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 212 (S.D.N.Y. 1992).  "Absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel."  *Trief v. Dun &*

*Bradstreet Corp.,* 840 F. Supp. 277, 281 (S.D.N.Y. 1993); *see also In re Warner Commun. Sec. Litig.,* 798 F.2d 35, 37 (2d Cir. 1986) ("[I]t is not a district judge's job to dictate the terms of a class settlement.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Clark v. Ecolab Inc.,* 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009); *Newberg* § 11.25. To grant preliminary approval, the court need only find there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

In determining whether a settlement is fair, reasonable and adequate, courts in this Circuit look to the nine "*Grinnell* factors," which are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000). In approving FLSA settlements, courts have considered factors similar to those employed in the Rule 23 context, namely whether the

settlement reached resulted from contested litigation and whether the result represents a fair and adequate resolution of those contested issues.  *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Mohney,* 2009 U.S. Dist. LEXIS 27899; *Stefaniak,* 2008 U.S. Dist. LEXIS 53872; *Clark,* 2010 U.S. Dist. LEXIS 47036; *McMahon,* 2010 U.S. Dist. LEXIS 18913.  These factors are easily met here.[5]

The first *Grinnell* factor – the complexity, expense and likely duration of the litigation – favors approval of the Settlement.  If the Court does not approve the Settlement, in the *Cunningham* case alone significant additional time, effort, and expense would be incurred to resolve the remaining discovery disputes, address a decertification motion by Defendants, prepare for trial, make pre-trial submissions and motions, complete a complicated class action trial, make post-trial submissions, and pursue likely appeals.  Risk, expense, and delay permeate such a process.  Courts have recognized that this factor favors settlement under similar circumstances.  *Ayers v. SGS Control Servs*., 2008 U.S. Dist. LEXIS 69307, at *15 (S.D.N.Y. Sept. 9, 2008).

The third *Grinnell* factor – the stage of the proceedings and the amount of discovery completed – especially favors approval of the Settlement.  As discussed above at pages 6-8, this case had been fiercely litigated before the parties reached the Settlement.  In addition to the discovery disputes that were presented to the Court, the parties, on an almost daily basis, addressed discovery issues, exchanged letters, produced and reviewed documents, and took depositions.  *Supra* at pages 6-8.  The substantial amount of discovery permitted the parties to gain a full understanding of the issues in this litigation, both pre- and post-EDS/HP merger.  In this regard, the proper question is "whether counsel had an adequate appreciation of the merits of

---

[5]    The second *Grinnell* factor, the reaction of the Settlement Classes, will be before the Court following dissemination of the settlement notice.

the case before negotiating." *Warfarin,* 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal quotation marks omitted). Here, the information produced and discovery undertaken was sufficiently adversarial and part of "an aggressive effort" to learn the relevant facts and circumstances in an efficient and cost-effective manner, and exceeds the required standard. Accordingly, there can be little question that this factor favors approval of the Settlement.

The fourth through sixth *Grinnell* factors – namely, the risks faced in establishing liability and damages and maintaining the class action – all support approval of the Settlement. In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotations omitted). Even in cases where establishing liability appears to be a near certainty, courts recognize the inherent risks of submitting any claim to a jury. *See, e.g., McBean v. City of New York,* 233 F.R.D. 377, 387 (S.D.N.Y. Feb. 7, 2006) (noting that "there are no guarantees in life, and while it appears likely that plaintiffs would be able to establish liability at trial, things change").

Although Plaintiffs believe that their cases are all strong, they recognize that they faced real litigation risks if this case did not settle. These cases are not easily litigated. "Courts have recognized that wage and hour cases involve complex legal issues." *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *32 (S.D.N.Y. Apr. 16, 2012) (citing authorities). Many matters within this area of law remain *sui generis* or not entirely developed, for example,

there is uncertainty as to how to interpret the plain terms of the statute, there is a dispute as to how damages are calculated, and there is uncertainty as to how "representative" trials should proceed.[6]  For instance, a disputed issue exists as to the method for determining damages in this action.  The Circuit Courts that have addressed this issue have held that the appropriate measure of damages in a misclassification action is a fluctuating workweek half-time basis.  *See Desmond v. PNGI Charles Town Gaming, L.L.C.,* 630 F.3d 351 (4th Cir. 2011); *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010); *Clements v. Serco, Inc.,* 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.,* 173 F.3d 35 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135 (5th Cir. 1988).  But there is also contrary authority, including a decision of this Court and other district courts within this Circuit rejecting the half time method, *see, e.g., Ayers v. SGS Control Servs., Inc.*, 2007 U.S. Dist. LEXIS 19634, at *40–42 (S.D.N.Y. Feb. 27, 2007) (applying time and one-half method); *Perkins v. So. New Eng. Tel. Co.,* 2011 U.S. Dist. LEXIS 109882, at *13-15 (D. Conn. Sept. 27, 2011) (rejecting fluctuating workweek); *Mian v. GPM Investments, LLC,* 2012 U.S. Dist. LEXIS 121048 (D. Conn. Aug. 27, 2012) (overtime damages for misclassified employee calculated at time and one-half of regular rate of pay).  The risk of what standard would be applied regarding the calculation of damages was undeniable and would dramatically have impacted any recovery.

---

[6]      When the Klafter Olsen & Lesser firm tried such a case to a jury verdict in 2009, creating the jury instructions literally took three weeks of post-trial argument and deliberations between counsel and the most able Hon. Patty Shwartz (then of the District of New Jersey; now on the Third Circuit) because there were no sufficiently comprehensive jury instructions to be found *anywhere* as precedent explicating the intricacies of the FLSA's executive exemption test –just one of the matters at issue in this litigation.  The post-trial decision upholding the jury verdict by Judge Shwartz captures but a portion of the complexity of the task.  *See Stillman v. Staples, Inc.,* 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009).  Many of the uncertainties in this area of the law are captured by that decision wherein Judge Shwartz had to address such issues as how a representative case is tried, how damages are determined, what evidence is required to prove liability and damages, and the like.

The risks of establishing liability and taking on a misclassification collective or class case are objectively undeniable.  There are, it is fair to say, more adverse decisions – both on the merits and on decertification motions – than there are favorable ones in this area, as is exemplified both by Judge McMahon's decision in *Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 173918 (S.D.N.Y. Nov. 29, 2012), and by numerous other recent cases, including one case involving EDS itself.  *See, e.g., Heffelfinger v. Electronic Data Sys. Corp.*, No. 2:07-cv-00101-MMM-E (C.D. Cal. Feb. 26, 2013) (decertifying a collective action of EDS employees); *Scott v. SSP Am., Inc.,* 2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011) (summary judgment granted for employer in misclassification case); *Guinup v. Petr-All Petroleum Corp*., 2010 U.S. Dist. LEXIS 86280 (N.D.N.Y. Aug. 23, 2010) (same); *Taylor v. Autozone, Inc*., 2012 U.S. Dist. LEXIS 10207 (D. Az. Jan. 26, 2012) (same); *Thomas v. Dolgencorp, Inc.*, 2012 U.S. Dist. LEXIS 46667 (D.S.C. Apr. 3, 2012) (same); *Phillips v. Tacala, LLC*, 2012 U.S. Dist. LEXIS 112745 (D. Ala. Aug. 10, 2012) (same).  As to maintaining the class status through trial, while the Court conditionally certified the Cunningham Settlement Class, that was only a conditional certification and not for trial purposes.  EDS could certainly have been expected to file a motion for decertification, a motion often granted in FLSA misclassification cases.  *See, e.g., Heffelfinger; Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 2d 1230, 1239 (N.D. Ala. 2012); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088 (D. Kan. 2012); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 587 (E.D. La. 2008).  Here, the testimonial record was particularly complex because of the multiple job codes at issue in the *Cunningham* case, which, even as Judge Howell noted when he conditionally certified the case, could have (perhaps at a minimum) required subclassification of positions, a point as to which Defendants would have argued further supported decertification.  As to the *Salva* case, the court had not yet

certified the case under the FLSA as a collective action or as a class action with respect to state law claims.   As to all of these potential class and collective action matters, the Parties fully anticipated that determinations as to final certification or conditional certification would only have been reached after intense, exhaustive briefing and argument by both Parties.   The original conditional certification in *Cunningham* alone encompassed thousands of pages of materials; only more might have been expected for any further motions in these cases.

There is also trial risk presented by trying a misclassification case on a class-wide basis. In fact, we are aware of four significant collective action misclassification cases that have been tried to a jury verdict since 2009.   Class Counsel (Klafter Olsen & Lesser) were the co-lead counsel in one of those cases, *Stillman*, 2009 U.S. Dist. LEXIS 42247, where plaintiffs prevailed after a six week trial and obtained a $5 million verdict for 342 opt-in claimants.   By contrast, defendant employer verdicts were obtained in *Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa. Apr. 21, 2013) (collective action defendant's verdict); *Perkins v. So. New England Tel. Co., Inc.* No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) (same); and *Henry v. Quicken Loans, Inc.,* No. 2:04-cv-40346 (E.D. Mich. 17, 2011) (same).   That such a risk is present is undeniable.

As to the fourth through six *Grinnell* factors, in entering final approval of another substantial and similarly structured hybrid settlement where other cases had been transferred to be settled in a comprehensive settlement, Judge Jones of the Middle District of Pennsylvania wrote in evaluating the Third Circuit's equivalent factors (under the Third Circuit's similar "*Girsch*" factors) that:

> It is undisputed that copious risks abound with respect to
> maintaining this action and establishing liability: class certification
> would need to be achieved (and/or decertification motions would
> need to be defeated) in each case, dispositive motions would need

> to be defended (and likely appealed), and multiple trials would
> ensue in varying venues, ultimately leading to disparate outcomes
> unfavorable to certain of the plaintiffs. Further, questions of law
> remain with respect to crucial issues such as whether Rite Aid
> properly exempted ASMs from overtime pay and, if so, what
> method of damage calculation is appropriate. In light of these
> substantial risks, we find that these factors likewise weigh in favor
> of settlement.

*Craig v. Rite Aid Corp.*, 2013 U.S. Dist. LEXIS 2658, at *38 (M.D. Pa. Jan. 7, 2013).

Indeed, in that case, like the *Cunningham* case, despite "extensive discovery and motion

practice" that had been taken in the conditionally certified collective action case, there remained

substantial outstanding discovery and there were (precisely as here) most significant disputes as

to matters involving further discovery, including electronic discovery, leading Judge Jones to

write, in words no less applicable here:

> With respect to the likely duration of this litigation, counsel for the
> parties aver, and we have no reason to doubt, that even the most
> procedurally advanced of these consolidated cases would require
> additional and substantial discovery in order to place the case in a
> trial posture. In each of the cases, dispositive motions remained to
> be filed and discovery disputes remained outstanding. If the history
> of the *Craig* case alone is any indication, and it is our supposition
> given the nature of these matters that it is, discovery disputes
> would abound in many of these individual cases resulting in
> additional and unnecessary delay and expense. Not only would
> continued litigation of these cases result in a massive expenditure
> of Class Counsel's resources, it would likewise place a substantial
> drain on judicial resources. For all of these reasons, the first
> [complex, expense, likely duration] factor weighs in favor of
> settlement.

*Id.* at *33.

The seventh *Grinnell* factor – the ability of defendants to withstand a greater judgment –

is not relevant here.  This factor alone does not suggest that the settlement is unfair.  *Torres v.

Gristede's Oper. Corp.*, 2010 U.S. Dist. LEXIS 139144, at *18 (S.D.N.Y. Dec. 21, 2010) (citing

authorities).

The eighth and ninth factors – the range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation – also favor approval of the Settlement. "There is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion – and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Visa*, 396 F.3d at 119 (quotation omitted). Whether a specific settlement amount is "reasonable is not susceptible to a mathematical equation yielding a particularized sum." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. Apr. 7, 2003). "In fact, a settlement can be approved even when it amounts to only a small percentage of the recovery sought." *Id.* (citing authorities); *Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

Here, the $11.8 million Settlement is reasonable because it is a substantial compromise of a fiercely disputed matter that will provide significant benefits to each of the Settlement Classes members who files a claim, with net payments averaging approximately $950. Lesser Dec. at ¶ 27. Since the amount each Class member will receive will be proportional to his or her time worked within the applicable limitations period, fairness in settlement payments will result, and this methodology  has been adopted for numerous other misclassification claims such, as here, in cases involving multiple actions, both class and collective actions claims and cases involving multiple job classifications. *See, e.g., Stillman, supra* (final approval of single settlement of

multiple cases at differing stages including multiple job classifications and both state and federal and collective and class actions granted on November 4, 2011); *Jenkins v. TSA Stores, Inc.,* No. 09-cv-02224 (JFB) (ETB) (E.D.N.Y.) (final approval of hybrid structured settlement of class and collective claims of differing job statuses granted on September 30, 2011).  While plaintiffs may have been able to obtain a larger amount at trial, the "proposed settlement provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road."  *Strougo*, 258 F. Supp. 2d at 260.  Even if a "class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery."  *Id*. at 261.  Any Class member who believed he or she would have been entitled to more could, of course, opt out and pursue an independent remedy.

Additionally, the fairness of the settlement process and of the Settlement itself was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements.  *See Visa*, 396 F.3d at 119 (recognizing importance of district court's finding that "experienced and able counsel fought this litigation 'aggressively' and 'negotiated feverishly'") (quotation omitted); *see* Lesser Decl. Exhibits B-F (describing plaintiffs' counsel's experience, including in wage-hour class actions in firm resumes).

In sum, the *Grinnell* factors weigh in favor of final approval.  Because the Settlement is "fair, adequate, and reasonable, and not a product of collusion," *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval of this Rule 23 Class Settlement.

## II.     The Classes Should Be Certified For Settlement Purposes

As noted, there are three proposed Settlement Classes – the *Cunningham* FLSA collective action, the *Salva* putative FLSA collective action and the *Salva* putative state law Rule 23 class. Plaintiffs submit that they meet of the requirements for class and collective action treatment under Rule 23(a), 23(b)(3), and the FLSA.[7]

It is well recognized that the requirements for conditional certification of a collective action under Section 16(b) of the FLSA (29 U.S.C. § 216(b)) are more lenient than those under Rule 23.  *E.g.*, *Cruz v. Lyn-Rog Inc.*, 754 F. Supp. 2d 521, 524 (E.D.N.Y. 2010) ("Courts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Rule 23.") (*quoting Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001)); *Cabrera v. 211 Garage Corp.,* 2008 U.S. Dist. LEXIS 67050 (S.D.N.Y. Aug. 22, 2008) ("The requirements for Rule 23 class certification are far more stringent than those for conditional collective action certification under § 216(b).").

As discussed below, all of the Rule 23 certification requirements for settlement purposes are met for the proposed State Class, and consequently, the conditional certification requirements under the FLSA are met for the two FLSA collective actions.  *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed

---

[7]       Although Defendants support settlement of this matter as both a class and collective action, as noted above, they have expressly denied both that Plaintiffs were misclassified and that certification of the collective in the litigation was appropriate, and expressly reserve the right to oppose certification of any class or collective in these matters, on any grounds, in the event that the Settlement is not finalized.  The argument set forth in this Section, concerning the propriety of class and collective action certification, is submitted by Plaintiffs only, and is not joined by Defendants.

settlement of the action prior to certification of the class."), *aff'd,* 907 F.2d 1295 (2d Cir. 1990). Preliminary settlement class certification and appointment of Class Counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Litig.*, 55 F.3d 784 (3d Cir. 1995).

### A.      The Rule 23(a) Factors Are Met

#### 1.      Numerosity

One of the prerequisites to a class action is that the class must be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  The word "impracticable" is key.  As the Second Circuit has explained, the numerosity requirement "does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class ma[kes] use of the class action appropriate."  *Central States Southeast v. Merck-Medco,* 504 F.3d 229, 244-45 (2d Cir. 2007); *see also Goldstein v. North Jersey Trust Co.,* 39 F.R.D. 363, 367 (S.D.N.Y. 1966) (explaining that "impracticable" does not mean "incapable of being performed" or "infeasible").

Here, the proposed Settlement Classes consist of approximately 7,230 individuals who were employed by Defendants in the United States during the applicable limitations periods.  For purposes of settlement, the impracticability of joining all of these individuals in a single suit is not disputed.  *Cf. Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993) (noting that relevant considerations for "impracticability" include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits….") (*citing* HERBERT B.

NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 3.06, at 143 (2d ed. 1985). Rule 23 (a)'s numerosity requirement is satisfied.

### 2.      Commonality and Typicality

Rule 23(a)'s commonality requirement is met if plaintiff's grievances share a common question of law or of fact, *see In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987), while typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). In practice, Rule 23(a)'s commonality and typicality criteria "tend to merge' because '[b]oth serve as guideposts for determining whether … the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *Caridad v. Metro-N. Commuter R.R.,* 191 F. 3d 283, 291 (2d Cir. 1999).

At issue in this case is the nature of Defendants' having classified the positions at issue as non-exempt under federal and state wage laws.  Plaintiffs' and Settlement Classes' members' claims share common questions of law and fact, arise from the same course of events, and rely on similar legal arguments to support liability.  The claims of the Plaintiffs, themselves, who held such positions during the applicable periods of time, and those of the members of the Settlement Classes are so interrelated that the interests of the absent members of the Settlement Classes are fairly protected.

### 3.      Adequacy

An examination of adequacy under Rule 23(a) has two aspects:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and she must have no interests antagonistic to the interests of the other class members.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000); *Toure v. Cent. Parking Sys*., 2007

U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007).  A conflict or potential conflict "must be fundamental" and go to the very subject matter of the litigation to defeat certification. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) (*quoting In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir. 2001)).

Given the interrelatedness of claims of the Settlement class representatives (the named Plaintiffs in the actions) and the members of the Settlement Classes' claims, the named Plaintiffs had every incentive to pursue the Settlement Classes members' claims vigorously.  Nor does any conflict exist between their interests and those of the members of the Settlement Classes, much less a "fundamental" conflict that would defeat class certification.  While the claims of a class representative may not be identical to every claim of every putative class member, the proposed settlement class representative can adequately represent the putative class.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).

Plaintiffs' counsel, Class Counsel, also meet the adequacy requirement of Rule 23(a)(4). The law firms representing the Settlement Classes have exceedingly substantial experience prosecuting and settling wage and hour class actions, particularly misclassification claims, a form of claim that they have litigated, tried and settled in numerous cases, as well as having substantial experience in other forms of aggregate and complex litigation.  *See* Lesser Decl. ¶ 4, Exs. B-E.

### B.    The Rule 23(b)(3) Factors Are Met

Rule 23(b)(3) permits class certification "if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  This Rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision

as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." FED. R. CIV. P. 23(b)(3) advisory committee's note to 1966 amend.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor Prods*., 521 U.S. 591, 623 (1997). Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole … predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation omitted). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. FED. R. CIV. P. 23(b)(3).[8]

Plaintiffs submit that the requirements of Rule 23(b)(3) are met because a settlement class that will determine the issues common to all class members and fix compensation for

---

[8]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank,* 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

alleged injury is far superior to numerous trials that risk disparate results for similarly situated individuals.  Litigation on a case-by-case basis would be extremely costly for Plaintiffs and the members of the Settlement Classes, and piecemeal litigation would tax the resources of the judiciary.  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  With a single exception of whom the Parties are aware, no other member of the Settlement Classes has brought individual, class, or collective actions related to the matters contested here.  Finally, Defendants' agreement to pay the valid and timely claims of Qualified Claimants on a *pro rata* basis eliminates any possible predominance of individual issues.

For all the reasons stated above, the Settlement Classes meet the requirements of Rule 23(a)(1) and (b)(3) and certification for settlement purposes should be granted.

## III.   The Proposed Notice to the Members of the Settlement Classes Is Adequate and Satisfies Due Process

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement."  The Second Circuit has interpreted this provision as requiring adequacy of a settlement notice in a class action to be "measured by reasonableness":

> There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'  Notice is 'adequate if it may be understood by the average class member.'"

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 438 (2d Cir. 2007) (*quoting Wal-Mart Stores,* 396 F.3d at 113-14)); *see also Achtman v. Kirby, McInerney Squire,* 464 F.3d 328, 338 (2d Cir. 2006) (notice of pendency need only contain "information that a reasonable

person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class") (*quoting In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

The Parties' proposed form of notifying members of the Settlement Classes of the proposed settlement provides information on the meaning and nature of the proposed Settlement Classes; the terms of the proposed settlement; the amount of the settlement; the fact that Class Counsel will receive attorneys' fees and costs and that the Settlement's class representatives will receive service payments; and the procedures and deadlines for objecting to, commenting on, or being excluded from, the Settlement.  The Notice further informs the members of the Settlement Classes of how payments will be determined and even provides them with a specific possible recovery (assuming the Court approves the requested fees, costs and service awards).

The Settlement Notice (with attached Consent to Join and Claim Forms) will be sent via first class mail to all Class Members with follow-up procedures for handling returned mail and for a supplemental mailing to Class Members who do not submit a claim form or exclusion request.  *See Wolfert v. Transamerica Home First*, 439 F.3d 165, 176 (2d Cir. 2006) (approving use of first-class mail as means of providing notice to class).  Thus, both the contents of the Settlement Notice and the methods of communicating it are more than adequate to satisfy due process.

## IV.   Plaintiffs' Counsel Should Be Appointed Class Counsel

Lawyers from the law firms representing the Plaintiffs, Seth R. Lesser of Klafter Olsen & Lesser LLP; Cary S. McGehee of Pitt, Mcgehee, Palmer, Rivers & Golden, PC; Marc S. Hepworth of Hepworth, Gershbaum & Roth, PLLC; Brian Bromberg of Bromberg Law Office, P.C.; and Jeffrey Gottlieb of Berger & Gottlieb, should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel for a certified

class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(C)(i).

The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. FED. R. CIV. P. 23(g)(1)(C)(ii). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." FED. R. CIV. P. 23(g) advisory committee's note.

Proposed Class Counsel meet all of these criteria. These firms did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the claims of the Settlement Class Members. Proposed Class Counsel have, as noted, substantial experience prosecuting and settling employment class actions, including retail chain store misclassification wage and hour actions, and the lawyers assigned to this matter by proposed Class Counsel are well-versed in wage and hour law and in class action law, and are well qualified to represent the interests of the Class. *See* Lesser Decl. ¶ 4, Exs. B-E.

## **CONCLUSION**

For all of the foregoing reasons, the Parties jointly ask that the Court (1) preliminarily approve the proposed settlement; (2) conditionally certify the collective and class actions for purposes of settlement; (3) approve the proposed form of notice and the manner of disseminating the notice; (4) appoint Class Counsel, Class Representatives and Claims Administrator; (5) set a date by which members of the Settlement Classes must submit comments on, objections to, claims for proceeds under, or requests to be excluded from, the proposed settlement; and (6) schedule the final settlement approval hearing.

Date:   September 19, 2014

For the Plaintiff and Settlement Classes

s/ Seth R. Lesser

Seth R. Lesser
Fran Rudich
Michael J. Palitz
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:   (914) 934-9200
Facsimile:     (914) 934-9220

Marc S. Hepworth
David A. Roth
Charles Gershbaum
HEPWORTH GERSHBAUM & ROTH PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone:   (212) 545-1199
Facsimile:     (212) 532-3801

Cary S. McGehee
Beth M. Rivers
PITT, MCGEHEE, PALMER, RIVERS & GOLDEN, PC
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
Telephone:   (248) 398-9800

Brian L. Bromberg
BROMBERG LAW OFFICE, P.C.
Standard Oil Building
26 Broadway, 21st Floor
New York, New York 10004
Telephone:   (212) 248-7906

Jeffrey M. Gottlieb
BERGER & GOTTLIEB
150 East 18th Street, Suite PHR
New York, New York 10003
Telephone:   (212) 228-9795

For the Defendant

s/ Joshua B. Waxman

Lisa A. Schreter
LITTLER MENDELSON, PC
3344 Peachtree Road, N.E.
Suite 1500
Atlanta, GA 30326
Telephone: (404) 760-3938

John A. Ybarra
LITTLER MENDELSON, PC
321 N. Clark Street, Suite 1000
Chicago, IL  60654
Telephone: (312) 795-3207

Joshua B. Waxman
Richard W. Black
LITTLER MENDELSON, P.C.
1150 17th St., N.W., Suite 900
Telephone:  (202) 842-3400